BOOKER V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-02-119-CR

KEITH BOOKER APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 235
TH
 DISTRICT COURT OF COOKE COUNTY

------------

OPINION

------------

Appellant Keith Booker appeals his conviction by a jury for possession of a controlled substance with intent to deliver, with a deadly weapon finding.  He raises nine points on appeal.  We will affirm.

I.  Factual and Procedural Background

On April 28, 2000, the police executed a search warrant at 1508 South Lindsay Street in Gainesville, Texas, where Appellant was residing.  Appellant lived there with his fiancée Lisa Ford.  When the police found Appellant, he was alone in the house and awake in bed.  He moved his hand underneath a pillow toward the headboard as officers approached.  Appellant was arrested, and the police searched the residence.  The police discovered, among other items, men’s clothing, a marijuana blunt,
(footnote: 1) two cell phones, a pager, razor blades, a Winchester rifle, a plastic bag full of marijuana, crack cocaine, and over $3,700 in cash.  The police also found a loaded automatic firearm on the headboard of the bed in which Appellant was lying and another loaded revolver under the bed.

Ford was charged with possession with intent to deliver a controlled substance.  She pleaded guilty and received a ten-year deferred sentence. Appellant was also indicted for possession with intent to deliver between four and 200 grams of cocaine.  Additionally, the indictment alleged that Appellant used or exhibited a deadly weapon, a handgun, during the commission of or immediate flight from the charged offense.  After hearing and considering all of the testimony and evidence presented, a jury found Appellant guilty of the charged offense and found the deadly weapon allegation to be true.  The trial court later set Appellant’s punishment at thirty-five years’ confinement. 

II.  Legal and Factual Sufficiency

In his eighth and ninth points, Appellant challenges the legal and factual sufficiency of the evidence in support of his conviction for possession of a controlled substance and in support of the deadly weapon finding.  Specifically, Appellant argues that the evidence was legally and factually insufficient to prove that he was the owner of the seized drugs because the State did not show that it was more probable that the drugs belonged to him than to Ford. He further contends that there was legally and factually insufficient evidence to support the deadly weapon finding. 

A.  Standards of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia, 
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Burden v. State
, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001).  This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson, 
443 U.S. at 319, 99 S. Ct. at 2789.  When performing a legal sufficiency review, we may not sit as a thirteenth juror, re-evaluating the weight and credibility of the evidence and, thus, substituting our judgment for that of the fact finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).

In determining the legal sufficiency of the evidence to show appellant's intent, and faced with a record that supports conflicting inferences, we “must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution.”  
Matson v. State, 
819 S.W.2d 839, 846 (Tex. Crim. App. 1991).  The standard of review is the same for direct and circumstantial evidence cases.  
Burden
, 55 S.W.3d at 613; 
Kutzner v. State
, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999).

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party. 
 Johnson v. State
, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); 
Clewis v. State
, 922 S.W.2d 126, 129, 134 (Tex. Crim. App. 1996).  Evidence is factually insufficient if it is so weak as to be clearly wrong and manifestly unjust or the adverse finding is against the great weight and preponderance of the available evidence.  
Johnson
, 23 S.W.3d at 11.  

Therefore, we must determine whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the verdict, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof.  
Id.
  In performing this review, we are to give due deference to the fact finder’s determinations. 
 Id.
 at 8-9; 
Clewis, 
922 S.W.2d at 136.  We may not substitute our judgment for that of the fact finder’s.  
Johnson
, 23 S.W.3d at 12.  Consequently, we may find the evidence factually insufficient only where necessary to prevent manifest injustice.  
Johnson
, 23 S.W.3d at 9, 12; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).

To make a determination of factual insufficiency, a complete and detailed examination of all the relevant evidence is required.  
Johnson
, 23 S.W.3d at 12.  A proper factual sufficiency review must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

B.  Possession of the Drugs

Appellant challenges the legal and factual sufficiency of the evidence, arguing that “[t]he evidence was insufficient to prove that Appellant was the owner of the drugs.”  Appellant contends that there was no evidence that showed that it was more probable that the drugs belonged to him than to Lisa Ford, who he states in his brief owned the house at 1508 South Lindsay Street. 

With respect to the possession element of the offense of possession with intent to deliver, the State must prove two elements:  (1) that the accused exercised care, control, or management over the item, and (2) that the accused knew the illegal nature of the possessed item.  
See
 
Tex. Health & Safety Code Ann. 
§ 481.002(38) (Vernon 2003); 
Tex. Penal Code Ann.
 § 1.07(a)(39) (Vernon 2003); 
McQuarters v. State
, 58 S.W.3d 250, 259 (Tex. App.—Fort Worth 2001, pet. ref’d).  It is well established that drug possession need not be exclusive, and that an individual can possess drugs jointly with others.
  Martin v. State
, 753 S.W.2d 384, 387 (Tex. Crim. App. 1988).  When a defendant is not in exclusive possession or control of the place where the drugs are found, the State must affirmatively link the defendant to the drugs.  
McQuarters
, 58 S.W.3d at 259.

Appellant’s argument implies that the State bore the burden of proving that he was the exclusive owner of the seized drugs in order to convict him.  We liberally construe this argument as a challenge to the legal and factual sufficiency of the evidence affirmatively linking him to the drugs.  
See id
.  The “affirmative link” analysis is used to review the evidence of the accused’s knowledge and control of the contraband.  
Id
.  Among the factors to be considered in determining whether an affirmative link exists are:  (1) the defendant’s presence when the search warrant was executed; (2) whether the contraband was in plain view; (3) the defendant’s proximity to and the accessibility of the drugs; (4) whether the defendant was under the influence of drugs when arrested; (5) whether the defendant possessed other contraband or drugs when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of the contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the defendant’s conduct indicated a consciousness of guilt.  
Id
.

Appellant was present in the master bedroom when the search warrant was executed.  The police found $3,000 in an air conditioner window unit in the same bedroom and $600 under the bed.
(footnote: 2)  A marijuana blunt was found in plain view on the dresser.  Additionally, the police found crack cocaine hidden inside the air conditioning unit and underneath the bed.  Among other items seized from the bedroom, the police found a plastic bag of marijuana on top of the headboard, $110 cash on the floor between the bed and the wall, and a 30-30 rifle in the closet.  The officers also found razor blades and a plate with drug residue in the bedroom. 

During trial, Lisa Ford admitted that she had pleaded guilty to possession with intent to deliver a controlled substance, but she also testified that the guns and drugs seized on April 28, 2000 belonged to Appellant.
(footnote: 3)  She testified that Appellant was living with her at 1508 South Lindsay.  Despite Appellant’s argument that he did not live at 1508 South Lindsay, the evidence at trial indicated that he had repeatedly given 1508 South Lindsay as his address.  

To illustrate, Appellant’s driver’s license, found in a search of his car, listed his address as 1508 South Lindsay.  Further, when Appellant gave his address to the officer booking him into the jail, he again stated that it was 1508 South Lindsay in Gainesville.  Moreover, the State presented one of Appellant’s wireless phone bills; the billing address was 1508 South Lindsay.  Finally, when the police searched the bedroom, most of the clothes inside the closet appeared to be men’s clothing, according to one of the arresting officers. 

The police also discovered crack cocaine hidden in the ice box.  Officer Robert Talley, who aided in the execution of the search warrant, testified that the officers seized eight ounces of cocaine from the residence.  Officer Talley estimated the value of the seized cocaine to be around $8,000 to $9,000, an unlikely amount for personal use.  Officer Talley testified that the razor blades and plates had significance in that the razor blades could be used to cut the larger pieces of cocaine for sale.  Officer Talley testified that it was not unusual for a person selling drugs to be in possession of large sums of money and that they found $3,710 in the house.  Further, when asked whether he found any of Appellant’s personal papers in the bedroom, Officer Talley testified that he discovered numerous papers and “sticky notes” on the bedroom floor, including notes from Ford to Appellant and other “bits and scraps of paper” with Appellant’s name written on them. 

After the police found Appellant, they handcuffed him and sat him on the couch in the living room.  Officer Talley testified that while officers searched the master bedroom, Appellant was doing “[a] lot of talking.”  Officer Talley stated, “Every time an item would be found, a drug-related item, at least the very first couple, you know, you’d hear him saying, That’s it.  That’s all there is.”  Officer Steven Flemming, who was also present during the search, testified that Appellant twice said, “That’s all I have.  That’s it.  That’s all I have.”  Officer Flemming then testified that after making those two statements, Appellant “said that they had just found the mother load” concerning the search in the bedroom.  According to Officer Flemming, Appellant also told him that “he was just a little fish and that he didn’t know why [the police] were there.” Applying the appropriate standards of review, we hold that the evidence is both legally and factually sufficient to link Appellant to the drugs and to support the jury’s determination that Appellant possessed the drugs found at 1508 South Lindsay Street.

C.  Deadly Weapon Finding

Appellant also challenges the legal and factual sufficiency of the jury’s affirmative finding that he used a deadly weapon during the commission of the offense.  
See
 Tex. Code Crim. Proc. Ann.
 art. 42.12, § 3g(a)(2) (Vernon Supp. 2003).  The court of criminal appeals has interpreted the term “use” in this context to mean “any employment of a deadly weapon, even its simple possession, if such possession facilitates the associated felony.”  
Gale v. State
, 998 S.W.2d 221, 224 (Tex. Crim. App. 1999) (quoting 
Patterson v. State
, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989)).  Texas courts have reasoned that a weapon is “used” when found in close proximity to drugs in possession cases because the weapon protects the defendant’s care, custody, and management of the contraband.  
Id
.; 
Patterson
, 769 S.W.2d at 942; 
Coleman v. State
, 113 S.W.3d 496, 502-03 (Tex. App.—Houston [1
st
 Dist.] 2003, pets. filed) (upholding affirmative finding that defendant used deadly weapon because evidence showed that guns were discovered in the same bedroom as drugs); 
Sanchez v. State
, 906 S.W.2d 176, 181 (Tex. App.—Fort Worth 1995, pet. ref’d & pet. dism’d) (upholding affirmative finding that defendant used deadly weapon, in part, because evidence showed that rifles were located in the closet with the drugs).

In this case, as in 
Patterson
, the police discovered the guns in close proximity to the drugs and to Appellant.  Appellant was lying in the only bed in the master bedroom when the police found him.  In the same bedroom, the police offers found a loaded Larson brand .380 automatic gun on the headboard of the bed and a loaded Ruger 357 revolver under the bed.  Immediately before the police arrested Appellant, he was awake in the bed and moving his hand underneath a pillow in the direction of the headboard where the .380 was located.  As we described in detail above, the police also found a large amount of cash and drugs in the bedroom.  

Having reviewed the record under the applicable standards of review, following 
Patterson
 and its progeny, we hold that the evidence is both legally and factually sufficient to support the jury’s affirmative finding that Appellant used a deadly weapon during the commission of the offense.  Accordingly, we overrule Appellant’s eighth and ninth points.

III.  Evidence of Extraneous Offenses

In his first and second points, Appellant argues that the trial court erred when it admitted evidence concerning extraneous offenses over his rule 404 objections.  
See
 
Tex. R. Evid
. 404.  Appellant specifically complains about two of Lisa Ford’s statements:  (1) that he “was prone to violence,” and (2) that he had threatened to kill her.  Appellant also contends in his third point that the trial court erred in overruling his objection to Ford’s testimony that he had threatened to kill her because the State, in response to his pre-trial request, had failed to provide proper notice of the alleged threat.  The State maintains, however, that the trial court did not abuse its discretion because Appellant opened the door to evidence of extraneous conduct in his opening statement and cross-examination of Officer Talley. 

We review a trial court’s ruling on the admissibility of evidence under an abuse of discretion standard of review.  
Weatherred v. State
, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).  A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement.
  Id
.;
 Montgomery v. State
, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990).  In determining whether the trial court abused its discretion, we consider whether the court acted without reference to guiding rules and principles; that is, whether the court acted arbitrarily or unreasonably.  
Lyles v. State
, 850 S.W.2d 497, 502 (Tex. Crim. App. 1993).

The general rule regarding the admissibility of extraneous offenses is that an accused may not be tried for a collateral crime or for being a criminal generally.  
Tex. R. Evid
. 404; 
Williams v. State
, 662 S.W.2d 344, 346 (Tex. Crim. App. 1983); 
Booker v. State
, 103 S.W.3d 521, 539 (Tex. App.—Fort Worth 2003, pets. ref’d) (op. on reh’g).  Evidence of other crimes, wrongs, or acts of a defendant is not admissible unless it is relevant to prove some issue other than the defendant’s criminal character.  
Tex. R. Evid
. 404(b); 
Montgomery
, 810 S.W.2d at 387.  Rule 404(b) states that such evidence “may . . . be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.”  
Tex. R. Evid
. 404(b).  Extraneous offense evidence may also be admitted for the purpose of rebutting a defensive theory.  
Id
.; 
Wheeler v. State
, 67 S.W.3d 879, 886-87 (Tex. Crim. App. 2002); 
Powell v. State
, 63 S.W.3d 435, 439 (Tex. Crim. App. 2001).

Rule 404(b) provides that on timely request by the accused in a criminal case, the state must give reasonable notice in advance of the trial of its intent during its case-in-chief to introduce evidence other than that arising from the same transaction.  
Tex. R. Evid
. 404(b).  The purpose of this notice provision is “to adequately apprise the defendant of the extraneous offenses the State intends to introduce at trial.”  
Self v. State
, 860 S.W.2d 261, 264 (Tex. App.—Fort Worth 1993, pet. ref’d).  

On appeal, Appellant challenges Ford’s statements that he was “prone to violence” and that he had threatened to kill her.  In its brief, the State argues that the statements were admissible to rebut Appellant’s defensive theories. The State directs us to the following portion of Appellant’s opening statement, in which it claims Appellant opened the door to the extraneous offense testimony: 

[Appellant] was merely [at Ford’s house] to see and have a sexual relationship with a person by the name of Lisa Ford who the evidence will show is a controlling person, who is much older or older than [Appellant].  She is the drug dealer.  The evidence will show in this case that she is a drug dealer and that she is shifting the blame, the evidence will show, to [Appellant] so she can stay out of jail. 

The State also argues that Appellant opened the door during his cross-examination of Officer Talley when he questioned Officer Talley about whether he was looking at Ford as a suspect and about Ford providing information concerning the investigation of Appellant to the State’s investigator Kevin Benton. 

[DEFENSE COUNSEL]:  Were you looking at Lisa Ford as a suspect?

A:  Not really.

Q:  Who did you get the name of Lisa Ford or Keith Booker from?

[STATE]: Object, Your Honor.  May we approach?

THE COURT: All right.

[STATE]: That invades the State’s right to protect disclosure of a confidential informant.

THE COURT: I’ll sustain the objection.

Q.  Did this person assist you in this investigation?

A.  The one I got his name from?

Q.  Yes.

A.  No, sir.

Q.  They didn’t do anything?

A.  Well, I don’t know what you mean by anything.  The one I got information from on Keith Booker originally was from the DA investigator.

. . . .

Q.  And what was his name?

A.  Kevin Benton.

Q.  Had Kevin Benton ever been in that house before?

A.  Not to my knowledge.

Q.  So to your knowledge  -- Was he getting that information from somebody else?

A.  Yes, sir.

Q.  And that somebody knew Keith Booker and Lisa Ford or do you know?

A.  No, it came from Lisa Ford. 

While the State conducted its direct examination of Lisa Ford, the prosecutor questioned her about her conversations with the Cooke County District Attorney’s Office.  The State asked Ford what she told the DA’s Office concerning weapons or drugs being located in her house, and Ford replied, “I told [the assistant district attorney] that there was guns in my house, there was drugs underneath my bed, and [Appellant] was prone to violence.”  Appellant objected, stating that it was “clearly extraneous conduct, not admissible,” and the court overruled his objection.  The State maintains that the complained of evidence was admissible to rebut Appellant’s defensive theories that he did not live at the residence, that Ford was a controlling person, and that she was implicating Appellant to shift the blame away from herself toward Appellant. 

Additionally, after Appellant cross-examined Ford, the State asked the court to conduct a hearing outside the jury’s presence regarding the admissibility of other extraneous offense evidence.  The State elicited testimony from Ford concerning an assault on her in their living room while she was working on the computer, which led her to seek a protective order.
(footnote: 4)  Over Appellant’s objection, the court permitted Ford to testify to this assault in front  of the jury.  She testified that Appellant beat her while she was sitting in her home at her computer.  Ford testified that she did not call the police because she was afraid.  When asked what she was afraid of, Ford replied, “That he would kill me.  He’s continuously told me he would kill me.”  Appellant then objected on the basis that Appellant’s alleged threats to kill Ford were extraneous and that he had not been given notice of “any type of statement like this.”  The court overruled Appellant’s objection. 

The State contends that Appellant opened the door to evidence regarding his prior relationship with Ford and her statements to the district attorney’s office.  Thus, the State argues that the trial court did not abuse its discretion in overruling Appellant’s objection to the admission of Ford’s statement concerning Appellant’s alleged threats to kill her.  

Appellant responds that Ford’s two statements were not admissible and that none of the exceptions to the general rule prohibiting the admission of extraneous offenses were applicable.  He also argues that the trial court abused its discretion with respect to the statement concerning the alleged threats to kill because the State failed to give reasonable notice of its intent to use such evidence.  We need not reach these issues because, without deciding but assuming solely for the sake of argument that the trial court abused its discretion by admitting Ford’s two statements, we conclude that Appellant was not harmed.  The erroneous admission of an extraneous offense does not constitute constitutional error.  
Avila v. State, 
18 S.W.3d 736, 741-42 (Tex. App.—San Antonio 2000, no pet.).  
Therefore, we are to disregard the error unless it affected Appellant’s substantial rights.  
Tex. R. App. P.
 44.2(b).  

A substantial right is affected when the error had a substantial and injurious effect or influence on the jury’s verdict. 
 King v. State
, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing 
Kotteakos v. United States
, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); 
Coggeshall,
 961 S.W.2d 639, 643 (Tex. App.—Fort Worth 1998, pet. ref’d).  In making this determination, we review the record as a whole. 
 Kotteakos,
 328 U.S. at 764-65, 66 S. Ct. at 1248.
  While we may consider whether there is overwhelming evidence of Appellant’s guilt, we are to consider the trial court’s erroneous admission of the extraneous offense evidence in the context of the entire record.  
See Motilla v. State
, 78 S.W.3d 352, 358 (Tex. Crim. App. 2002).  

After she made the complained of statements, the State did not question Ford further about Appellant being prone to violence or the alleged threats.  
Cf. Russell v. State
,113 S.W.3d 530, 550-51 (Tex. App.—Fort Worth 2003, pet. filed) (holding erroneous admission of extraneous offense evidence harmful, in part, because the State spent
 nearly one-third of trial proving up the extraneous offense and referred to it several times during its closing argument); 
Booker
, 103 S.W.3d at 538 (holding erroneous admission of extraneous offense evidence harmful, in part, because the State spent over half of trial proving it up and repeatedly emphasized it during closing argument).  Moreover, the State did not refer to the extraneous offense testimony during its closing argument.  In fact, the State twice encouraged the jury to ignore Ford’s testimony–which would have included the complained of testimony–because the other evidence presented at trial was sufficient to convict Appellant.  Finally, the trial court instructed the jury in the charge that it could only consider the extraneous offense evidence in passing upon the weight of Lisa Ford’s testimony. 

Considering not only the substantial evidence of Appellant’s guilt, but also the context of the entire case against Appellant, and assuming error, we nevertheless hold that the trial court’s admission of Ford’s statements that Appellant was prone to violence and had threatened to kill her did not have a substantial or injurious affect on the jury’s verdict and did not affect Appellant’s substantial rights. 
See Motilla, 
78 S.W.3d at 359; 
King
, 953 S.W.2d at 271.  Thus, we disregard any error.  
See 
Tex. R. App. P. 44.2(
b).  We overrule points one, two, and three.

IV.  Access to and Notice of State’s Exhibit No. 41

In his fourth point, Appellant complains that the trial court erred when it admitted State’s Exhibit No. 41, a love letter to him, because the State did not provide his attorney with a copy of the letter before trial.  The State maintains that the record does not support Appellant’s contention that he was denied access to State’s Exhibit No. 41. 

Appellant cites 
Brady v. Maryland
, 373 U.S. 83, 87, 83 S. Ct. 1194,  1196-97 (1963) in support of his fourth point; however, there is no general right to discovery in a criminal case, and 
Brady
 does not create one.  
See Weatherford v. Bursey
, 429 U.S. 545, 559, 97 S. Ct. 837, 846 (1977); 
Page v. State
, 7 S.W.3d 202, 206 (Tex. App.—Fort Worth 1999, pet. ref’d) (en banc).  “To invoke 
Brady
, the accused must present evidence that:  (1) the prosecution suppressed or withheld evidence; (2) this evidence would have been favorable to the accused; and (3) this evidence would have been material to the accused’s defense.”  
Page
, 7 S.W.3d at 206 (citations omitted).  

Having examined the record and Appellant’s terse argument, we hold that Appellant has not met his burden under 
Brady
.  
See id.
  Further, the State directs us to the following portion of the agreement with Appellant regarding discovery, which was on file before trial:  “Physical Evidence seized from the Defendant in this cause is available to be inspected by counsel for the Defendant at a time mutually acceptable for both the State and the Defense at the location of the evidence.”  Appellant has offered no evidence that the State failed to comply with the discovery agreement or that he was otherwise prevented from accessing State’s Exhibit No. 41.  We overrule Appellant’s fourth point.

V.  Effective Assistance of Counsel

In his fifth and sixth points, Appellant argues that he received ineffective assistance of counsel during the voir dire stage of the trial because his attorney did not object to or challenge for cause (1) a former employee of the law firm that the district attorney had formerly practiced with and (2) the district attorney’s cousin, both of whom served on the jury.  Appellant contends that the former employee should have been challenged for cause on the basis that she had a bias or prejudice against Appellant.  
See
 Tex. Code Crim. Proc. Ann.
 art. 35.16(a)(9) (Vernon Supp. 2003) (stating that a challenge for cause may be made by either the State or the defense on the basis that the prospective juror has a bias or prejudice in favor of or against the defendant).  Additionally, Appellant complains that the cousin should have been challenged for cause because he was related within the third degree of consanguinity to the district attorney and maintained a bias or prejudice against the applicable law upon which Appellant relied.  
See id
. § 35.16(c).

Whether a person is related to a district attorney within the third degree of consanguinity is determinable by application of section 573.023 of the Texas Government Code.  
Tex. Gov’t Code Ann. 
§ 573.023 (Vernon 1994); 
see
 Tex. Code Crim. Proc. Ann.
 art. 35.16(c); 
Ex parte Fierro
, 79 S.W.3d 54, 56 (Tex. Crim. App. 2002).  Section 573.023 “specifies the manner of computing the degree of consanguinity between two persons and explicitly names the relationships which fall within the third degree; a cousin is not included among such relatives.”  
Ex parte Fierro
, 79 S.W.3d at 56.

During voir dire, the State asked the venire panel whether anyone knew District Attorney Janelle Haverkamp, other than by reputation.  Venireperson Rauschuber stated, “She’s a distant kinfolk.”  When asked how distant, Venireperson Rauschuber replied that he thought she was his father’s cousin, and “[t]hat would make her pretty far out.”  Venireperson Rauschuber stated that nothing about that relationship would cause him to have any difficulty in being fair and impartial.  We hold that Venireperson Rauschuber was not challengeable for cause under section 35.16(c) because he was not related to Ms. Haverkamp within the third degree of consanguinity.  
See
 
Tex. Code Crim. Proc. Ann.
 art. 35.16(c); 
Tex. Gov’t Code Ann. 
§ 573.023; 
Ex parte Fierro
, 79 S.W.3d at 56 (holding that the trial court erred in concluding that juror, who was the appellant’s cousin,
 was challengeable for cause under article 35.16(b)(2) because the juror was not related to the appellant within the third degree of consanguinity).  Thus, Appellant’s ineffective assistance of counsel claim based on his trial counsel’s decision not to challenge for cause 
Venireperson Rauschuber
 under article 35.16(c) is without merit.

We next turn to whether Appellant received ineffective assistance of counsel by his counsel’s failure to object to or challenge for cause the district attorney’s former employee or the district attorney’s distant cousin under section 35.16(a)(9).  
See
 
Tex. Code Crim. Proc. Ann.
 art. 35.16(a)(9).  We apply a two-pronged test to ineffective assistance of counsel claims.  
Strickland v. Washington
, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); 
Thompson v. State
, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).  First, appellant must show that his counsel’s performance was deficient; second, appellant must show the deficient performance prejudiced the defense.  
Strickland
, 466 U.S. at 687, 104 S. Ct. at 2064.

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case.  
Thompson
, 9 S.W.3d at 813.  The issue is whether counsel’s assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error.  
Strickland
, 466 U.S. at 688-89, 104 S. Ct. at 2065.  “[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.”  
Id. 
at 690, 104 S. Ct. at 2066.  An allegation of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.  
Thompson
, 9 S.W.3d at 814.  Our scrutiny of counsel’s performance must be highly deferential, and every effort must be made to eliminate the distorting effects of hindsight.  
Strickland
, 466 U.S. at 689, 104 S. Ct. at 2065.

The second prong of 
Strickland
 requires a showing that counsel’s errors were so serious that they deprived the defendant of a fair trial, that is, a trial whose result is reliable.  
Id
. at 687, 104 S. Ct. at 2064.  In other words, Appellant must show there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. 
Id
. at 694, 104 S. Ct. at 2068.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  
Id
.  The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.  
Id
. at 697, 104 S. Ct. at 2070.

In evaluating an ineffective assistance claim, we must not indulge in speculation concerning counsel’s decision-making processes or the reasons why counsel acted or failed to act in a particular manner.  
Jackson v. State
, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).  Thus, when the record is silent as to counsel’s reasons for performing or failing to perform in the manner alleged, we cannot conclude that counsel’s performance was deficient.  
Id
.  As the court of criminal appeals has pointed out and this court has noted, the record on direct appeal is generally insufficient to show that counsel’s performance was so deficient as to meet the first part of the 
Strickland
 standard.  
Mitchell v. State
, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002); 
Thompson
, 9 S.W.3d at 813-14; 
Ex parte Okere
, 56 S.W.3d 846, 855-56 (Tex. App.—Fort Worth 2001, pet. ref’d); 
Patterson v. State
, 46 S.W.3d 294, 306 (Tex. App.—Fort Worth 2001, no pet.).  

We find this to be particularly true in the case now before us.  Appellant did not file a motion for new trial raising a claim of ineffective assistance of counsel that would have allowed his trial counsel the opportunity to explain any trial strategy upon which his decisions may have been based.  Thus, the record does not reflect trial counsel’s reasons for acting or failing to act in the manner challenged by Appellant.  We hold that Appellant has failed to meet his burden under 
Strickland
, and we accordingly overrule points five and six.

VI.  Jury Argument

In his seventh point, Appellant maintains that the trial court erred by allowing improper jury argument, specifically that which referred to Appellant’s attorney.  During closing arguments, Appellant made the following argument concerning the accomplice witness instruction in the jury charge:

[Defense Counsel]:  The fact that Lisa Ford got up here, I submit to you she is not credible.  She’s not believable.  And in this Charge it says -- and you’ll get a copy of this Charge -- it says in order to convict the Defendant, you must first believe the testimony of her is true.

[State]:  Objection.

[Defense Counsel]: Read it in the Charge there.

THE COURT:  I’ll overrule the objection.

[Defense Counsel]:  You must first believe that her testimony is true and it shows the Defendant is guilty as charged.  That’s the law.  You must believe her testimony to be true.  And I submit to you, ladies and gentlemen of the jury, it is not believable. 

. . . . 

Lisa Ford is not believable and you have to believe her testimony in order to convict Mr. Booker.

[State]:  I object, Your Honor.  That’s a misstatement of the law.

THE COURT:  Sustained.

[Defense Counsel]:  The Jury Charge reads, the witness, Lisa Ford, is an accomplice.  If an offense was committed, and you cannot convict the Defendant upon her testimony unless you first believe that her testimony is true and shows that the Defendant is guilty as charged.  You first believe that her testimony is true.

[State]:  I would object.  He’s leaving out “upon her testimony,” which is part of that sentence.

[Defense Counsel]:  I’ll let him get up here and he can read the whole paragraph to you.  He can read the whole paragraph to you.  I’m not trying to pull anything over on you.  Just please read the Jury Charge. 

In its rebuttal, the State responded to Appellant’s argument regarding the accomplice witness instruction with the following argument:

[State]:  Now, if this isn’t -- I don’t understand why [defense counsel] can’t read, but it says the witness, Lisa Ford, is an accomplice if an offense was committed and you cannot convict the Defendant -- 

[Defense Counsel]: Judge, I object to striking at me to the effect that I can’t read.  I can read.

THE COURT:  I’ll overrule the objection.

[State]:  They cannot convict the Defendant upon her testimony, upon her testimony alone.  Strike that out.  I don’t care.  Throw Lisa Ford’s testimony out.  Forget about it if you don’t believe it.  Just believe these police officers because they didn’t have any reason to lie. 

Appellant complains that the State’s comment unfairly criticized his trial counsel and his role in the trial and thus constituted improper jury argument.  The State responds that the prosecutor was not attacking Appellant’s counsel but instead was responding to Appellant’s argument concerning an instruction in the jury charge. 

To be permissible, the State’s jury argument must fall within one of the following four general areas:  (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement. 
 Felder v. State
, 848 S.W.2d 85, 94-95 (Tex. Crim. App. 1992), 
cert. denied
, 510 U.S. 829 (1993); 
Alejandro v. State
, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973).  Further, striking at a defendant over defense counsel’s shoulders is impermissible.  
Wilson v. State
, 938 S.W.2d 57, 62 (Tex. Crim. App. 1996), 
abrogated on other grounds by Motilla v. State,
 78 S.W.3d 352 (Tex. Crim. App. 2002).

It is well-settled, however, that the State may answer opposing counsel’s jury argument so long as the response does not exceed the scope of the invitation.  
Andujo v. State
, 755 S.W.2d 138, 144 (Tex. Crim. App. 1988); 
Villarreal v. State
, 79 S.W.3d 806, 813 (Tex. App.—Corpus Christi 2002, pet. ref’d).  Here, the State was responding to Appellant’s jury argument, in which defense counsel, on two occasions, did not read the accomplice witness instruction in its entirety.  The first time the State objected to defense counsel’s argument concerning the accomplice witness instruction, defense counsel argued, “Read it in the Charge there.”  Later, defense counsel again drew an objection, which was sustained, when he stated, “The Jury Charge reads . . .” and then only read the first portion of the instruction.  

Because the State was answering opposing counsel’s jury argument and because the response did not exceed the scope of the invitation, we hold that the trial court did not err in overruling Appellant’s objection to the State’s jury argument concerning the accomplice witness instruction.  We overrule Appellant’s seventh point.

VII.  Conclusion

Having overruled Appellant’s nine points, we affirm the trial court’s judgment.

ANNE GARDNER

JUSTICE

PANEL B: HOLMAN, GARDNER, and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P. 
47.2(b)

DELIVERED:  October 30, 2003

FOOTNOTES
1:
A blunt is a hollowed-out cigar filled with marijuana.  
Jackson v. State
, 94 S.W.3d 46, 47 (Tex. App.—Tyler 2002, pet. ref’d); 
Lassaint v. State
, 79 S.W.3d 736, 742 n.7 (Tex. App.—Corpus Christi 2002, no pet.).

2:
Lisa Ford testified that she owned the $600. 

3:
We do not, however, address whether the evidence sufficiently corroborated Ford’s accomplice witness testimony because Appellant does not raise that issue on appeal.  
See
 Tex. Code Crim. Proc. Ann.
 art. 38.14 (Vernon Supp. 2003); 
Cathey v. State
, 992 S.W.2d 460, 462-63 (Tex. Crim. App. 1999) (holding review of accomplice witness testimony under article 38.14 involves inquiry into whether there is 
some
 non-accomplice evidence 
tending to connect
 the defendant with the offense), 
cert.  denied
, 528 U.S. 1082 (2000).

4:
In his brief, Appellant lists another extraneous offense, in which Appellant allegedly placed drugs in Ford’s car and slapped her while riding with her as part of the extraneous offense evidence adduced at trial; however, the portion of the record he cites was outside the presence of the jury and did not come into evidence.  Thus, it was not evidence considered by the jury.