COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO.  
2-02-119-CR
 
KEITH BOOKER                                                                     APPELLANT 
 
V.
 
THE STATE OF TEXAS                                                                  STATE 
 
------------
 
FROM THE 
235TH DISTRICT COURT OF COOKE COUNTY 
 
------------
 
OPINION
 
------------
        Appellant Keith Booker appeals his conviction by a jury for possession of 
a controlled substance with intent to deliver, with a deadly weapon finding. He 
raises nine points on appeal. We will affirm. 
I. Factual and Procedural Background
        On April 28, 2000, the police executed a search warrant at 1508 South 
Lindsay Street in Gainesville, Texas, where Appellant was residing. Appellant 
lived there with his fiancée Lisa Ford. When the police found Appellant, he was 
alone in the house and awake in bed. He moved his hand underneath a pillow 
toward the headboard as officers approached. Appellant was arrested, and the 
police searched the residence. The police discovered, among other items, 
men’s clothing, a marijuana blunt, 
 

 two cell phones, a pager, razor blades, a 
Winchester rifle, a plastic bag full of marijuana, crack cocaine, and over $3,700
in cash. The police also found a loaded automatic firearm on the headboard of
the bed in which Appellant was lying and another loaded revolver under the
bed.
        Ford was charged with possession with intent to deliver a controlled 
substance. She pleaded guilty and received a ten-year deferred sentence. 
Appellant was also indicted for possession with intent to deliver between four 
and 200 grams of cocaine. Additionally, the indictment alleged that Appellant 
used or exhibited a deadly weapon, a handgun, during the commission of or 
immediate flight from the charged offense. After hearing and considering all of 
the testimony and evidence presented, a jury found Appellant guilty of the 
charged offense and found the deadly weapon allegation to be true. The trial 
court later set Appellant’s punishment at thirty-five years’ confinement. 
II. Legal and Factual Sufficiency
        In his eighth and ninth points, Appellant challenges the legal and factual 
sufficiency of the evidence in support of his conviction for possession of a 
controlled substance and in support of the deadly weapon finding. Specifically, 
Appellant argues that the evidence was legally and factually insufficient to 
prove that he was the owner of the seized drugs because the State did not 
show that it was more probable that the drugs belonged to him than to Ford. 
He further contends that there was legally and factually insufficient evidence 
to support the deadly weapon finding. 
        A. Standards of Review 
        In reviewing the legal sufficiency of the evidence to support a conviction, 
we view all the evidence in the light most favorable to the verdict in order to 
determine whether any rational trier of fact could have found the essential 
elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 
U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Burden v. State, 55 S.W.3d 
608, 612 (Tex. Crim. App. 2001). This standard gives full play to the 
responsibility of the trier of fact to resolve conflicts in the testimony, to weigh 
the evidence, and to draw reasonable inferences from basic facts to ultimate 
facts. Jackson, 443 U.S. at 319, 99 S. Ct. at 2789. When performing a legal 
sufficiency review, we may not sit as a thirteenth juror, re-evaluating the 
weight and credibility of the evidence and, thus, substituting our judgment for 
that of the fact finder. Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. 
App. 1999), cert. denied, 529 U.S. 1131 (2000). 
        In determining the legal sufficiency of the evidence to show appellant's 
intent, and faced with a record that supports conflicting inferences, we “must 
presume — even if it does not affirmatively appear in the record — that the trier 
of fact resolved any such conflict in favor of the prosecution, and must defer 
to that resolution.” Matson v. State, 819 S.W.2d 839, 846 (Tex. Crim. App. 
1991). The standard of review is the same for direct and circumstantial 
evidence cases. Burden, 55 S.W.3d at 613; Kutzner v. State, 994 S.W.2d 
180, 184 (Tex. Crim. App. 1999). 
        In reviewing the factual sufficiency of the evidence to support a 
conviction, we are to view all the evidence in a neutral light, favoring neither 
party. Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Clewis v. 
State, 922 S.W.2d 126, 129, 134 (Tex. Crim. App. 1996). Evidence is 
factually insufficient if it is so weak as to be clearly wrong and manifestly 
unjust or the adverse finding is against the great weight and preponderance of 
the available evidence. Johnson, 23 S.W.3d at 11. 
        Therefore, we must determine whether a neutral review of all the 
evidence, both for and against the finding, demonstrates that the proof of guilt 
is so obviously weak as to undermine confidence in the verdict, or the proof of 
guilt, although adequate if taken alone, is greatly outweighed by contrary proof. 
Id. In performing this review, we are to give due deference to the fact finder’s 
determinations. Id. at 8-9; Clewis, 922 S.W.2d at 136. We may not substitute 
our judgment for that of the fact finder’s. Johnson, 23 S.W.3d at 12. 
Consequently, we may find the evidence factually insufficient only where 
necessary to prevent manifest injustice. Johnson, 23 S.W.3d at 9, 12; Cain v. 
State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). 
        To make a determination of factual insufficiency, a complete and detailed 
examination of all the relevant evidence is required. Johnson, 23 S.W.3d at 
12. A proper factual sufficiency review must include a discussion of the most 
important and relevant evidence that supports the appellant’s complaint on 
appeal. Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). 
        B. Possession of the Drugs 
        Appellant challenges the legal and factual sufficiency of the evidence, 
arguing that “[t]he evidence was insufficient to prove that Appellant was the 
owner of the drugs.” Appellant contends that there was no evidence that 
showed that it was more probable that the drugs belonged to him than to Lisa 
Ford, who he states in his brief owned the house at 1508 South Lindsay Street. 
        With respect to the possession element of the offense of possession with 
intent to deliver, the State must prove two elements: (1) that the accused 
exercised care, control, or management over the item, and (2) that the accused 
knew the illegal nature of the possessed item. See Tex. Health & Safety Code 
Ann. § 481.002(38) (Vernon 2003); Tex. Penal Code Ann. § 1.07(a)(39) 
(Vernon 2003); McQuarters v. State, 58 S.W.3d 250, 259 (Tex. App.—Fort 
Worth 2001, pet. ref’d). It is well established that drug possession need not 
be exclusive, and that an individual can possess drugs jointly with others. 
Martin v. State, 753 S.W.2d 384, 387 (Tex. Crim. App. 1988). When a 
defendant is not in exclusive possession or control of the place where the drugs 
are found, the State must affirmatively link the defendant to the drugs. 
McQuarters, 58 S.W.3d at 259. 
        Appellant’s argument implies that the State bore the burden of proving 
that he was the exclusive owner of the seized drugs in order to convict him. 
We liberally construe this argument as a challenge to the legal and factual 
sufficiency of the evidence affirmatively linking him to the drugs. See id. The 
“affirmative link” analysis is used to review the evidence of the accused’s 
knowledge and control of the contraband. Id. Among the factors to be 
considered in determining whether an affirmative link exists are: (1) the 
defendant’s presence when the search warrant was executed; (2) whether the 
contraband was in plain view; (3) the defendant’s proximity to and the 
accessibility of the drugs; (4) whether the defendant was under the influence 
of drugs when arrested; (5) whether the defendant possessed other contraband 
or drugs when arrested; (6) whether the defendant made incriminating 
statements when arrested; (7) whether the defendant attempted to flee; (8) 
whether the defendant made furtive gestures; (9) whether there was an odor 
of the contraband; (10) whether other contraband or drug paraphernalia were 
present; (11) whether the defendant owned or had the right to possess the 
place where the drugs were found; (12) whether the place where the drugs 
were found was enclosed; (13) whether the defendant was found with a large 
amount of cash; and (14) whether the defendant’s conduct indicated a 
consciousness of guilt. Id. 
        Appellant was present in the master bedroom when the search warrant 
was executed. The police found $3,000 in an air conditioner window unit in 
the same bedroom and $600 under the bed. 
 

 A marijuana blunt was found in 
plain view on the dresser. Additionally, the police found crack cocaine hidden
inside the air conditioning unit and underneath the bed. Among other items
seized from the bedroom, the police found a plastic bag of marijuana on top of
the headboard, $110 cash on the floor between the bed and the wall, and a 30-30 rifle in the closet. The officers also found razor blades and a plate with drug
residue in the bedroom. 
        During trial, Lisa Ford admitted that she had pleaded guilty to possession 
with intent to deliver a controlled substance, but she also testified that the guns 
and drugs seized on April 28, 2000 belonged to Appellant. 
 

 She testified that 
Appellant was living with her at 1508 South Lindsay. Despite Appellant’s
argument that he did not live at 1508 South Lindsay, the evidence at trial
indicated that he had repeatedly given 1508 South Lindsay as his address. 
        To illustrate, Appellant’s driver’s license, found in a search of his car, 
listed his address as 1508 South Lindsay. Further, when Appellant gave his 
address to the officer booking him into the jail, he again stated that it was 1508 
South Lindsay in Gainesville. Moreover, the State presented one of Appellant’s 
wireless phone bills; the billing address was 1508 South Lindsay. Finally, when 
the police searched the bedroom, most of the clothes inside the closet appeared 
to be men’s clothing, according to one of the arresting officers. 
        The police also discovered crack cocaine hidden in the ice box. Officer 
Robert Talley, who aided in the execution of the search warrant, testified that 
the officers seized eight ounces of cocaine from the residence. Officer Talley 
estimated the value of the seized cocaine to be around $8,000 to $9,000, an 
unlikely amount for personal use. Officer Talley testified that the razor blades 
and plates had significance in that the razor blades could be used to cut the 
larger pieces of cocaine for sale. Officer Talley testified that it was not unusual 
for a person selling drugs to be in possession of large sums of money and that 
they found $3,710 in the house. Further, when asked whether he found any 
of Appellant’s personal papers in the bedroom, Officer Talley testified that he 
discovered numerous papers and “sticky notes” on the bedroom floor, including 
notes from Ford to Appellant and other “bits and scraps of paper” with 
Appellant’s name written on them. 
        After the police found Appellant, they handcuffed him and sat him on the 
couch in the living room. Officer Talley testified that while officers searched 
the master bedroom, Appellant was doing “[a] lot of talking.” Officer Talley 
stated, “Every time an item would be found, a drug-related item, at least the 
very first couple, you know, you’d hear him saying, That’s it. That’s all there 
is.” Officer Steven Flemming, who was also present during the search, testified 
that Appellant twice said, “That’s all I have. That’s it. That’s all I have.” 
Officer Flemming then testified that after making those two statements, 
Appellant “said that they had just found the mother load” concerning the search 
in the bedroom. According to Officer Flemming, Appellant also told him that 
“he was just a little fish and that he didn’t know why [the police] were there.”         Applying the appropriate standards of review, we hold that the evidence 
is both legally and factually sufficient to link Appellant to the drugs and to 
support the jury’s determination that Appellant possessed the drugs found at 
1508 South Lindsay Street. 
        C. Deadly Weapon Finding 
        Appellant also challenges the legal and factual sufficiency of the jury’s 
affirmative finding that he used a deadly weapon during the commission of the 
offense. See Tex. Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2) (Vernon Supp. 
2003). The court of criminal appeals has interpreted the term “use” in this 
context to mean “any employment of a deadly weapon, even its simple 
possession, if such possession facilitates the associated felony.” Gale v. State, 
998 S.W.2d 221, 224 (Tex. Crim. App. 1999) (quoting Patterson v. State, 769 
S.W.2d 938, 941 (Tex. Crim. App. 1989)). Texas courts have reasoned that 
a weapon is “used” when found in close proximity to drugs in possession cases 
because the weapon protects the defendant’s care, custody, and management 
of the contraband. Id.; Patterson, 769 S.W.2d at 942; Coleman v. State, 113 
S.W.3d 496, 502-03 (Tex. App.—Houston [1st Dist.] 2003, pets. filed) 
(upholding affirmative finding that defendant used deadly weapon because 
evidence showed that guns were discovered in the same bedroom as drugs); 
Sanchez v. State, 906 S.W.2d 176, 181 (Tex. App.—Fort Worth 1995, pet. 
ref’d & pet. dism’d) (upholding affirmative finding that defendant used deadly 
weapon, in part, because evidence showed that rifles were located in the closet 
with the drugs). 
        In this case, as in Patterson, the police discovered the guns in close 
proximity to the drugs and to Appellant. Appellant was lying in the only bed in 
the master bedroom when the police found him. In the same bedroom, the 
police offers found a loaded Larson brand .380 automatic gun on the headboard 
of the bed and a loaded Ruger 357 revolver under the bed. Immediately before 
the police arrested Appellant, he was awake in the bed and moving his hand 
underneath a pillow in the direction of the headboard where the .380 was 
located. As we described in detail above, the police also found a large amount 
of cash and drugs in the bedroom. 
        Having reviewed the record under the applicable standards of review, 
following Patterson and its progeny, we hold that the evidence is both legally 
and factually sufficient to support the jury’s affirmative finding that Appellant 
used a deadly weapon during the commission of the offense. Accordingly, we 
overrule Appellant’s eighth and ninth points. 
III. Evidence of Extraneous Offenses
        In his first and second points, Appellant argues that the trial court erred 
when it admitted evidence concerning extraneous offenses over his rule 404 
objections. See Tex. R. Evid. 404. Appellant specifically complains about two 
of Lisa Ford’s statements: (1) that he “was prone to violence,” and (2) that he 
had threatened to kill her. Appellant also contends in his third point that the 
trial court erred in overruling his objection to Ford’s testimony that he had 
threatened to kill her because the State, in response to his pre-trial request, had 
failed to provide proper notice of the alleged threat. The State maintains, 
however, that the trial court did not abuse its discretion because Appellant 
opened the door to evidence of extraneous conduct in his opening statement 
and cross-examination of Officer Talley. 
        We review a trial court’s ruling on the admissibility of evidence under an 
abuse of discretion standard of review. Weatherred v. State, 15 S.W.3d 540, 
542 (Tex. Crim. App. 2000). A trial court abuses its discretion when its 
decision lies outside the zone of reasonable disagreement. Id.; Montgomery v. 
State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990). In determining whether 
the trial court abused its discretion, we consider whether the court acted 
without reference to guiding rules and principles; that is, whether the court 
acted arbitrarily or unreasonably. Lyles v. State, 850 S.W.2d 497, 502 (Tex. 
Crim. App. 1993). 
        The general rule regarding the admissibility of extraneous offenses is that 
an accused may not be tried for a collateral crime or for being a criminal 
generally. Tex. R. Evid. 404; Williams v. State, 662 S.W.2d 344, 346 (Tex. 
Crim. App. 1983); Booker v. State, 103 S.W.3d 521, 539 (Tex. App.—Fort 
Worth 2003, pets. ref’d) (op. on reh’g). Evidence of other crimes, wrongs, or 
acts of a defendant is not admissible unless it is relevant to prove some issue 
other than the defendant’s criminal character. Tex. R. Evid. 404(b); 
Montgomery, 810 S.W.2d at 387. Rule 404(b) states that such evidence “may 
. . . be admissible for other purposes, such as proof of motive, opportunity, 
intent, preparation, plan, knowledge, identity, or absence of mistake or 
accident.” Tex. R. Evid. 404(b). Extraneous offense evidence may also be 
admitted for the purpose of rebutting a defensive theory. Id.; Wheeler v. State, 
67 S.W.3d 879, 886-87 (Tex. Crim. App. 2002); Powell v. State, 63 S.W.3d 
435, 439 (Tex. Crim. App. 2001). 
        Rule 404(b) provides that on timely request by the accused in a criminal 
case, the state must give reasonable notice in advance of the trial of its intent 
during its case-in-chief to introduce evidence other than that arising from the 
same transaction. Tex. R. Evid. 404(b). The purpose of this notice provision 
is “to adequately apprise the defendant of the extraneous offenses the State 
intends to introduce at trial.” Self v. State, 860 S.W.2d 261, 264 (Tex. 
App.—Fort Worth 1993, pet. ref’d). 
        On appeal, Appellant challenges Ford’s statements that he was “prone to 
violence” and that he had threatened to kill her. In its brief, the State argues 
that the statements were admissible to rebut Appellant’s defensive theories. 
The State directs us to the following portion of Appellant’s opening statement, 
in which it claims Appellant opened the door to the extraneous offense 
testimony: 
[Appellant] was merely [at Ford’s house] to see and have a sexual
relationship with a person by the name of Lisa Ford who the
evidence will show is a controlling person, who is much older or
older than [Appellant]. She is the drug dealer. The evidence will
show in this case that she is a drug dealer and that she is shifting
the blame, the evidence will show, to [Appellant] so she can stay
out of jail. 

        The State also argues that Appellant opened the door during his cross-examination of Officer Talley when he questioned Officer Talley about whether 
he was looking at Ford as a suspect and about Ford providing information 
concerning the investigation of Appellant to the State’s investigator Kevin 
Benton. 
[DEFENSE COUNSEL]: Were you looking at Lisa Ford as a suspect?
 
A: Not really. 
 
Q: Who did you get the name of Lisa Ford or Keith Booker from? 
 
[STATE]: Object, Your Honor. May we approach? 
 
THE COURT: All right. 
 
[STATE]: That invades the State’s right to protect disclosure 
of a confidential informant. 
 
THE COURT: I’ll sustain the objection. 
 
Q. Did this person assist you in this investigation? 
 
A. The one I got his name from? 
 
Q. Yes. 
 
A. No, sir. 
 
Q. They didn’t do anything? 
 
A. Well, I don’t know what you mean by anything. The one I got 
information from on Keith Booker originally was from the DA 
investigator.
. . . .
 
Q. And what was his name? 
 
A. Kevin Benton. 
 
Q. Had Kevin Benton ever been in that house before? 
 
A. Not to my knowledge. 
 
Q. So to your knowledge -- Was he getting that information from 
somebody else? 
 
A. Yes, sir. 
 
Q. And that somebody knew Keith Booker and Lisa Ford or do you 
know?
 
A. No, it came from Lisa Ford. 

        While the State conducted its direct examination of Lisa Ford, the 
prosecutor questioned her about her conversations with the Cooke County 
District Attorney’s Office. The State asked Ford what she told the DA’s Office 
concerning weapons or drugs being located in her house, and Ford replied, “I 
told [the assistant district attorney] that there was guns in my house, there was 
drugs underneath my bed, and [Appellant] was prone to violence.” Appellant 
objected, stating that it was “clearly extraneous conduct, not admissible,” and 
the court overruled his objection. The State maintains that the complained of 
evidence was admissible to rebut Appellant’s defensive theories that he did not 
live at the residence, that Ford was a controlling person, and that she was 
implicating Appellant to shift the blame away from herself toward Appellant. 
        Additionally, after Appellant cross-examined Ford, the State asked the 
court to conduct a hearing outside the jury’s presence regarding the 
admissibility of other extraneous offense evidence. The State elicited testimony 
from Ford concerning an assault on her in their living room while she was 
working on the computer, which led her to seek a protective order. 
 

 Over 
Appellant’s objection, the court permitted Ford to testify to this assault in front 
of the jury. She testified that Appellant beat her while she was sitting in her
home at her computer. Ford testified that she did not call the police because
she was afraid. When asked what she was afraid of, Ford replied, “That he
would kill me. He’s continuously told me he would kill me.” Appellant then
objected on the basis that Appellant’s alleged threats to kill Ford were
extraneous and that he had not been given notice of “any type of statement like
this.” The court overruled Appellant’s objection. 
        The State contends that Appellant opened the door to evidence regarding 
his prior relationship with Ford and her statements to the district attorney’s 
office. Thus, the State argues that the trial court did not abuse its discretion 
in overruling Appellant’s objection to the admission of Ford’s statement 
concerning Appellant’s alleged threats to kill her. 
        Appellant responds that Ford’s two statements were not admissible and 
that none of the exceptions to the general rule prohibiting the admission of 
extraneous offenses were applicable. He also argues that the trial court abused 
its discretion with respect to the statement concerning the alleged threats to 
kill because the State failed to give reasonable notice of its intent to use such 
evidence. We need not reach these issues because, without deciding but 
assuming solely for the sake of argument that the trial court abused its 
discretion by admitting Ford’s two statements, we conclude that Appellant was 
not harmed. The erroneous admission of an extraneous offense does not 
constitute constitutional error. Avila v. State, 18 S.W.3d 736, 741-42 (Tex. 
App.—San Antonio 2000, no pet.). Therefore, we are to disregard the error 
unless it affected Appellant’s substantial rights. Tex. R. App. P. 44.2(b). 
        A substantial right is affected when the error had a substantial and 
injurious effect or influence on the jury’s verdict. King v. State, 953 S.W.2d 
266, 271 (Tex. Crim. App. 1997) (citing Kotteakos v. United States, 328 U.S. 
750, 776, 66 S. Ct. 1239, 1253 (1946)); Coggeshall, 961 S.W.2d 639, 643 
(Tex. App.—Fort Worth 1998, pet. ref’d). In making this determination, we 
review the record as a whole. Kotteakos, 328 U.S. at 764-65, 66 S. Ct. at 
1248. While we may consider whether there is overwhelming evidence of
Appellant’s guilt, we are to consider the trial court’s erroneous admission of the
extraneous offense evidence in the context of the entire record. See Motilla v.
State, 78 S.W.3d 352, 358 (Tex. Crim. App. 2002). 
        After she made the complained of statements, the State did not question 
Ford further about Appellant being prone to violence or the alleged threats. Cf. 
Russell v. State,113 S.W.3d 530, 550-51 (Tex. App.—Fort Worth 2003, pet. 
filed) (holding erroneous admission of extraneous offense evidence harmful, in 
part, because the State spent nearly one-third of trial proving up the extraneous 
offense and referred to it several times during its closing argument); Booker,
103 S.W.3d at 538 (holding erroneous admission of extraneous offense
evidence harmful, in part, because the State spent over half of trial proving it
up and repeatedly emphasized it during closing argument). Moreover, the State
did not refer to the extraneous offense testimony during its closing argument. 
In fact, the State twice encouraged the jury to ignore Ford’s testimony–which
would have included the complained of testimony–because the other evidence
presented at trial was sufficient to convict Appellant. Finally, the trial court
instructed the jury in the charge that it could only consider the extraneous
offense evidence in passing upon the weight of Lisa Ford’s testimony. 
        Considering not only the substantial evidence of Appellant’s guilt, but also 
the context of the entire case against Appellant, and assuming error, we 
nevertheless hold that the trial court’s admission of Ford’s statements that 
Appellant was prone to violence and had threatened to kill her did not have a 
substantial or injurious affect on the jury’s verdict and did not affect Appellant’s 
substantial rights. See Motilla, 78 S.W.3d at 359; King, 953 S.W.2d at 271. 
Thus, we disregard any error. See Tex. R. App. P. 44.2(b). We overrule points 
one, two, and three. 
IV. Access to and Notice of State’s Exhibit No. 41
        In his fourth point, Appellant complains that the trial court erred when it 
admitted State’s Exhibit No. 41, a love letter to him, because the State did not 
provide his attorney with a copy of the letter before trial. The State maintains 
that the record does not support Appellant’s contention that he was denied 
access to State’s Exhibit No. 41. 
        Appellant cites Brady v. Maryland, 373 U.S. 83, 87, 83 S. Ct. 1194, 
1196-97 (1963) in support of his fourth point; however, there is no general 
right to discovery in a criminal case, and Brady does not create one. See 
Weatherford v. Bursey, 429 U.S. 545, 559, 97 S. Ct. 837, 846 (1977); Page 
v. State, 7 S.W.3d 202, 206 (Tex. App.—Fort Worth 1999, pet. ref’d) (en 
banc). “To invoke Brady, the accused must present evidence that: (1) the 
prosecution suppressed or withheld evidence; (2) this evidence would have 
been favorable to the accused; and (3) this evidence would have been material 
to the accused’s defense.” Page, 7 S.W.3d at 206 (citations omitted). 
        Having examined the record and Appellant’s terse argument, we hold that 
Appellant has not met his burden under Brady. See id. Further, the State 
directs us to the following portion of the agreement with Appellant regarding 
discovery, which was on file before trial: “Physical Evidence seized from the 
Defendant in this cause is available to be inspected by counsel for the 
Defendant at a time mutually acceptable for both the State and the Defense at 
the location of the evidence.” Appellant has offered no evidence that the State 
failed to comply with the discovery agreement or that he was otherwise 
prevented from accessing State’s Exhibit No. 41. We overrule Appellant’s 
fourth point. 
V. Effective Assistance of Counsel
        In his fifth and sixth points, Appellant argues that he received ineffective 
assistance of counsel during the voir dire stage of the trial because his attorney 
did not object to or challenge for cause (1) a former employee of the law firm 
that the district attorney had formerly practiced with and (2) the district 
attorney’s cousin, both of whom served on the jury. Appellant contends that 
the former employee should have been challenged for cause on the basis that 
she had a bias or prejudice against Appellant. See Tex. Code Crim. Proc. Ann. 
art. 35.16(a)(9) (Vernon Supp. 2003) (stating that a challenge for cause may 
be made by either the State or the defense on the basis that the prospective 
juror has a bias or prejudice in favor of or against the defendant). Additionally, 
Appellant complains that the cousin should have been challenged for cause 
because he was related within the third degree of consanguinity to the district 
attorney and maintained a bias or prejudice against the applicable law upon 
which Appellant relied. See id. § 35.16(c). 
        Whether a person is related to a district attorney within the third degree 
of consanguinity is determinable by application of section 573.023 of the Texas 
Government Code. Tex. Gov’t Code Ann. § 573.023 (Vernon 1994); see Tex. 
Code Crim. Proc. Ann. art. 35.16(c); Ex parte Fierro, 79 S.W.3d 54, 56 (Tex. 
Crim. App. 2002). Section 573.023 “specifies the manner of computing the 
degree of consanguinity between two persons and explicitly names the 
relationships which fall within the third degree; a cousin is not included among 
such relatives.” Ex parte Fierro, 79 S.W.3d at 56. 
        During voir dire, the State asked the venire panel whether anyone knew 
District Attorney Janelle Haverkamp, other than by reputation. Venireperson 
Rauschuber stated, “She’s a distant kinfolk.” When asked how distant, 
Venireperson Rauschuber replied that he thought she was his father’s cousin, 
and “[t]hat would make her pretty far out.” Venireperson Rauschuber stated 
that nothing about that relationship would cause him to have any difficulty in 
being fair and impartial. We hold that Venireperson Rauschuber was not 
challengeable for cause under section 35.16(c) because he was not related to 
Ms. Haverkamp within the third degree of consanguinity. See Tex. Code Crim. 
Proc. Ann. art. 35.16(c); Tex. Gov’t Code Ann. § 573.023; Ex parte Fierro, 79 
S.W.3d at 56 (holding that the trial court erred in concluding that juror, who 
was the appellant’s cousin, was challengeable for cause under article 
35.16(b)(2) because the juror was not related to the appellant within the third 
degree of consanguinity). Thus, Appellant’s ineffective assistance of counsel 
claim based on his trial counsel’s decision not to challenge for cause 
Venireperson Rauschuber under article 35.16(c) is without merit. 
        We next turn to whether Appellant received ineffective assistance of 
counsel by his counsel’s failure to object to or challenge for cause the district 
attorney’s former employee or the district attorney’s distant cousin under 
section 35.16(a)(9). See Tex. Code Crim. Proc. Ann. art. 35.16(a)(9). We 
apply a two-pronged test to ineffective assistance of counsel claims. Strickland 
v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Thompson 
v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). First, appellant must 
show that his counsel’s performance was deficient; second, appellant must 
show the deficient performance prejudiced the defense. Strickland, 466 U.S. 
at 687, 104 S. Ct. at 2064. 
        In evaluating the effectiveness of counsel under the first prong, we look 
to the totality of the representation and the particular circumstances of each 
case. Thompson, 9 S.W.3d at 813. The issue is whether counsel’s assistance 
was reasonable under all the circumstances and prevailing professional norms 
at the time of the alleged error. Strickland, 466 U.S. at 688-89, 104 S. Ct. at 
2065. “[C]ounsel is strongly presumed to have rendered adequate assistance 
and made all significant decisions in the exercise of reasonable professional 
judgment.” Id. at 690, 104 S. Ct. at 2066. An allegation of ineffective 
assistance must be firmly founded in the record, and the record must 
affirmatively demonstrate the alleged ineffectiveness. Thompson, 9 S.W.3d at 
814. Our scrutiny of counsel’s performance must be highly deferential, and 
every effort must be made to eliminate the distorting effects of hindsight. 
Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. 
        The second prong of Strickland requires a showing that counsel’s errors 
were so serious that they deprived the defendant of a fair trial, that is, a trial 
whose result is reliable. Id. at 687, 104 S. Ct. at 2064. In other words, 
Appellant must show there is a reasonable probability that, but for counsel’s 
unprofessional errors, the result of the proceeding would have been different. 
Id. at 694, 104 S. Ct. at 2068. A reasonable probability is a probability 
sufficient to undermine confidence in the outcome. Id. The ultimate focus of 
our inquiry must be on the fundamental fairness of the proceeding whose result 
is being challenged. Id. at 697, 104 S. Ct. at 2070. 
        In evaluating an ineffective assistance claim, we must not indulge in 
speculation concerning counsel’s decision-making processes or the reasons why 
counsel acted or failed to act in a particular manner. Jackson v. State, 877 
S.W.2d 768, 771 (Tex. Crim. App. 1994). Thus, when the record is silent as 
to counsel’s reasons for performing or failing to perform in the manner alleged, 
we cannot conclude that counsel’s performance was deficient. Id. As the 
court of criminal appeals has pointed out and this court has noted, the record 
on direct appeal is generally insufficient to show that counsel’s performance 
was so deficient as to meet the first part of the Strickland standard. Mitchell 
v. State, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002); Thompson, 9 S.W.3d 
at 813-14; Ex parte Okere, 56 S.W.3d 846, 855-56 (Tex. App.—Fort Worth 
2001, pet. ref’d); Patterson v. State, 46 S.W.3d 294, 306 (Tex. App.—Fort 
Worth 2001, no pet.). 
        We find this to be particularly true in the case now before us. Appellant 
did not file a motion for new trial raising a claim of ineffective assistance of 
counsel that would have allowed his trial counsel the opportunity to explain any 
trial strategy upon which his decisions may have been based. Thus, the record 
does not reflect trial counsel’s reasons for acting or failing to act in the manner 
challenged by Appellant. We hold that Appellant has failed to meet his burden 
under Strickland, and we accordingly overrule points five and six. 
VI. Jury Argument
        In his seventh point, Appellant maintains that the trial court erred by 
allowing improper jury argument, specifically that which referred to Appellant’s 
attorney. During closing arguments, Appellant made the following argument 
concerning the accomplice witness instruction in the jury charge: 
 
[Defense Counsel]: The fact that Lisa Ford got up here, I 
submit to you she is not credible. She’s not believable. And in this 
Charge it says -- and you’ll get a copy of this Charge -- it says in 
order to convict the Defendant, you must first believe the 
testimony of her is true. 
 
[State]: Objection. 
 
[Defense Counsel]: Read it in the Charge there. 
 
THE COURT: I’ll overrule the objection. 
 
[Defense Counsel]: You must first believe that her testimony 
is true and it shows the Defendant is guilty as charged. That’s the 
law. You must believe her testimony to be true. And I submit to 
you, ladies and gentlemen of the jury, it is not believable. 
 
. . . . 
 
Lisa Ford is not believable and you have to believe her 
testimony in order to convict Mr. Booker. 
 
[State]: I object, Your Honor. That’s a misstatement of the 
law.
 
THE COURT: Sustained. 
 
[Defense Counsel]: The Jury Charge reads, the witness, Lisa 
Ford, is an accomplice. If an offense was committed, and you 
cannot convict the Defendant upon her testimony unless you first 
believe that her testimony is true and shows that the Defendant is 
guilty as charged. You first believe that her testimony is true. 
 
[State]: I would object. He’s leaving out “upon her 
testimony,” which is part of that sentence. 
 
[Defense Counsel]: I’ll let him get up here and he can read 
the whole paragraph to you. He can read the whole paragraph to 
you. I’m not trying to pull anything over on you. Just please read 
the Jury Charge. 

        In its rebuttal, the State responded to Appellant’s argument regarding the 
accomplice witness instruction with the following argument: 
[State]: Now, if this isn’t -- I don’t understand why [defense
counsel] can’t read, but it says the witness, Lisa Ford, is an
accomplice if an offense was committed and you cannot convict
the Defendant -- 
 
[Defense Counsel]: Judge, I object to striking at me to the 
effect that I can’t read. I can read. 
 
THE COURT: I’ll overrule the objection. 
 
[State]: They cannot convict the Defendant upon her 
testimony, upon her testimony alone. Strike that out. I don’t care. 
Throw Lisa Ford’s testimony out. Forget about it if you don’t 
believe it. Just believe these police officers because they didn’t 
have any reason to lie. 

        Appellant complains that the State’s comment unfairly criticized his trial 
counsel and his role in the trial and thus constituted improper jury argument. 
The State responds that the prosecutor was not attacking Appellant’s counsel 
but instead was responding to Appellant’s argument concerning an instruction 
in the jury charge. 
        To be permissible, the State’s jury argument must fall within one of the 
following four general areas: (1) summation of the evidence; (2) reasonable 
deduction from the evidence; (3) answer to argument of opposing counsel; or 
(4) plea for law enforcement. Felder v. State, 848 S.W.2d 85, 94-95 (Tex. 
Crim. App. 1992), cert. denied, 510 U.S. 829 (1993); Alejandro v. State, 493 
S.W.2d 230, 231 (Tex. Crim. App. 1973). Further, striking at a defendant over 
defense counsel’s shoulders is impermissible. Wilson v. State, 938 S.W.2d 57, 
62 (Tex. Crim. App. 1996), abrogated on other grounds by Motilla v. State, 78 
S.W.3d 352 (Tex. Crim. App. 2002). 
        It is well-settled, however, that the State may answer opposing counsel’s 
jury argument so long as the response does not exceed the scope of the 
invitation. Andujo v. State, 755 S.W.2d 138, 144 (Tex. Crim. App. 1988); 
Villarreal v. State, 79 S.W.3d 806, 813 (Tex. App.—Corpus Christi 2002, pet. 
ref’d). Here, the State was responding to Appellant’s jury argument, in which 
defense counsel, on two occasions, did not read the accomplice witness 
instruction in its entirety. The first time the State objected to defense counsel’s 
argument concerning the accomplice witness instruction, defense counsel 
argued, “Read it in the Charge there.” Later, defense counsel again drew an 
objection, which was sustained, when he stated, “The Jury Charge reads . . .” 
and then only read the first portion of the instruction. 
        Because the State was answering opposing counsel’s jury argument and 
because the response did not exceed the scope of the invitation, we hold that 
the trial court did not err in overruling Appellant’s objection to the State’s jury 
argument concerning the accomplice witness instruction. We overrule 
Appellant’s seventh point. 
VII. Conclusion
        Having overruled Appellant’s nine points, we affirm the trial court’s 
judgment.
 
 
                                                          ANNE GARDNER 
                                                          JUSTICE
 
PANEL B:   HOLMAN, GARDNER, and WALKER, JJ. 
 
DO NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: October 30, 2003