**Ex parte Abel Luna FIERRO, III, Appellant.**

**Nos. 1879–00, 1880–00.**

Court of Criminal Appeals of Texas, En banc.

June 26, 2002.

David P. Zavoda, Odessa, for appellant.

Frank D. Brown, Dist. Atty., Fort Stockton, Matthew Paul, State's Attorney, Austin, for state.

## OPINION

JOHNSON, J., delivered the opinion of the court in which MEYERS, PRICE, WOMACK, KEASLER and HERVEY, JJ., joined.

### I.

Appellant, by separate indictments, was charged with two incidents of aggravated sexual assault. The day after a petit jury of twelve persons was selected and sworn for trial of both causes, one of the jurors informed the trial court that she was appellant's cousin. The state then challenged that juror for cause pursuant to Tex.Code Crim. Proc., Art. 35.16(b)(2), claiming that she was related to appellant within the third degree of consanguinity. Appellant personally and by his attorney stated that the juror was acceptable to the defense. The trial court granted the state's challenge for cause, stating, "The law gives both the State and the Defendant certain legal reasons to challenge a juror, which means that I have to excuse them if they meet the requirements under the statute and this is one of the mandatory challenges that I have to grant." The trial court then declared a mistrial, over appellant's objection. Immediately thereafter, before discharging the entire jury, the trial court explained to the jury that, because the juror was "related within the third degree of consanguinity ... to the defendant," it had to excuse her. It further stated that it was going to have to declare a mistrial because they could not proceed to a verdict in a criminal case with eleven jurors.

Appellant subsequently filed motions to dismiss and petitions for writ of habeas corpus seeking to preclude re-trial of these causes since jeopardy had attached when the jury had been previously selected and sworn and that there was no showing that the mistrial had been mandated by manifest necessity. After a hearing, the trial court denied appellant's motions to dismiss and habeas corpus petitions. Appellant appealed that denial.

Before the court of appeals, appellant claimed that the trial court erred when it denied his writ of habeas corpus based upon his plea of double jeopardy. The court of appeals held that there was no abuse of discretion "in granting the [s]tate's challenge for cause and excusing [the juror] from further service as a juror due to her relationship with [a]ppellant." *Ex parte Fierro*, Nos. 08–99–00293–CR, 2000 WL 1231491 and 08–99–00294–CR, 2000 WL 1231501 (Tex.App.-El Paso, delivered August 31, 2000, slip op. at 5). The court of appeals also held that "a manifest necessity existed requiring the trial court to declare a mistrial[,]" and thus the trial

court did not err in denying habeas corpus relief. *Id.*, slip op at 8. Appellant's petitions for discretionary review reassert that the mistrial granted by the trial court was not justified by manifest necessity and that re-trial is therefore barred by double jeopardy protections.

■ The juror at issue, as appellant's cousin,[1] was not, in fact, related to appellant within the third degree of consanguinity. Article 35.16(b)(2), which was referred to by the state, provides that a challenge for cause may be made by the state if a juror is related within the third degree of consanguinity, as determined under Chapter 573 of the Government Code, to the defendant. Tex. Govt.Code, § 573.023 specifies the manner of computing the degree of consanguinity between two persons[2] and explicitly names the relationships which fall within the third degree; a cousin is not included among such relatives.[3] Thus the trial court erred in concluding that the juror was challengeable for cause under Article 35.16(b)(2).

■ Appellant objected to a subsequent re-trial because such would violate his rights not to be placed in jeopardy twice for the same offense. As a general rule, after a jury has been impaneled and sworn, thus placing the defendant in jeopardy, double jeopardy bars a re-trial if the jury is discharged without reaching a verdict. *Brown v. State*, 907 S.W.2d 835, 839 (Tex.Crim.App.1995). An exception to this rule exists when the defendant consents to a re-trial or a mistrial is mandated by "manifest necessity." *Arizona v. Washington*, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978).

■ Manifest necessity is limited to very extraordinary and striking circumstances. *Ex parte Little*, 887 S.W.2d 62, 65 (Tex.Crim.App.1994). There must be a "high degree" of necessity that the trial come to an end. *Torres v. State*, 614 S.W.2d 436, 442 (Tex.Crim.App.1981). As we said in *Brown*,

> The import of *Harrison* is not simply that a trial judge make a perfunctory recitation of the alternatives before granting a mistrial, but that he carefully and deliberately consider which of all the alternatives best balances the defendant's interest in having his trial concluded in a single proceeding with society's "interest in fair trials designated to end in just judgments." *Arizona v. Washington*, 434 U.S. at 516, 98 S.Ct. at 836 (quoting *Hunter*, 336 U.S. [684] at 689, 69 S.Ct. [834] at 837 [93 L.Ed. 974

---

1. The juror made two statements about her relationship to appellant; she said that her mother had told her that appellant was her second cousin, then that appellant was her brother's cousin. Unless we assume that her brother's moiety set is different from her own, her brother's cousin is also her cousin. Cousins of any variety do not fall within the proscribed degree of consanguinity.

2. In cases where neither of the two persons is descended from the other, the degree of consanguinity is determined by adding the number of generations between the individual and the nearest common ancestor of the individual and individual's relative, and the number of generations between the relative and the nearest common ancestor.

3. Section 573.023(c) states:

   An individual's relatives within the third degree by consanguinity are the individual's:
   (1) parent or child (relatives of the first degree);
   (2) brother sister, grandparent, or grandchild (relatives of the second degree)
   (3) great-grandparent, great-grandchild, aunt who is a sister of a parent of the individual, uncle who is the brother of a parent of the individual, nephew who is a child of a brother or sister of the individual, or niece who is a child of a brother or sister of the individual (relatives of the third degree).

(1949) ] ). Otherwise, consideration of less drastic alternatives equates to little more than a *pro forma* exercise to mask the trial judge's preferred course of action. Accordingly, where the trial judge fails to explicitly or implicitly rule out a less drastic alternative in favor of granting a mistrial, he has abused his discretion.

*Brown*, at 840. *See also, Ex Parte Little* at 66; *Harrison v. State*, 788 S.W.2d 18, 23–24 (Tex.Crim.App.1990); *Torres* at 442–43.

Here, the challenged juror was not, in fact, challengeable for cause because of consanguinity with appellant. The trial court erred in excluding her for that reason.[4]

### II.

■ The record reflects that after erroneously discharging that juror, the trial court immediately declared a mistrial. There is nothing in the record to demonstrate that the trial court considered any less drastic alternatives, as is required by *Brown*. One less drastic alternative would have been allowing that juror to serve on the jury. Appellant affirmed on the record that he would not object to her serving. Another less drastic alternative would have been to determine if the parties would be willing to proceed with fewer than twelve jurors under Tex. Govt.Code, § 62.201.[5] Without evidence that the trial court considered such alternatives, as it was required to do, a mistrial was not "necessary," manifestly or otherwise. We therefore conclude that the trial court

abused its discretion in declaring a mistrial.

Appellant's pretrial applications to preclude retrial of the charges against him under the instant indictments should have been granted. We reverse the court of appeals and remand the instant causes to the trial court for action consistent with this opinion.

COCHRAN, J. joined Part I, otherwise concurred in the result.

HOLCOMB, J. filed a dissenting opinion in which KELLER, P.J., joined.

HOLCOMB, J., filed a dissenting opinion, in which KELLER, P.J., joined.

### OPINION

On February 24, 1999, a Brewster County grand jury returned two indictments charging appellant with two counts of aggravated sexual assault of a child. *See* Tex. Pen.Code § 22.021. On April 8, 1999, the State filed a motion to consolidate the cases for trial, and the trial court granted the motion. On June 21, 1999, the cases were called for trial. On that same day, a petit jury of twelve persons was selected and sworn. On the next day, one of the jurors, Sonia Jacquez, informed the trial court that she was related to appellant. The State then challenged Juror Jacquez for cause on the ground she was related to appellant within the third degree of consanguinity. *See* Tex.Code Crim. Proc. art. 35.16(b)(2); Tex. Gov't Code § 573.023. Appellant responded, not surprisingly, that Juror Jacquez was "acceptable" to him.

---

**4.** *See, also, U.S. v. Meza–Soria*, 935 F.2d 166 (9th Cir.1991) and *Commonwealth of Pennsylvania v. Kelly*, 797 A.2d 925 (Pa.Super.2002), where re-trials were precluded because of double jeopardy protections when trial courts had erroneously granted mistrial in the absence of manifest necessity.

**5.** Section 62.201 states, "The jury in a district court is composed of 12 persons, except that the parties may agree to try a particular case with fewer than 12 jurors." We have held that this provision applies to criminal trials. *Hatch v. State*, 958 S.W.2d 813 (Tex.Crim. App.1997).

The trial court then found, on the record, that Juror Jacquez was in fact related to appellant within the third degree of consanguinity.[1] The trial court granted the State's challenge and declared a mistrial on its own motion. Defense counsel then asked the trial court to "[p]lease note our objection against the mistrial," and the trial court responded, "I cannot proceed with eleven jurors."[2] Neither appellant nor the State mentioned the possibility of proceeding to trial with eleven jurors.

On July 14, 1999, before appellant could be re-tried, he filed motions to dismiss both indictments with prejudice. *See* Tex. Code Crim. Proc. art. 27.05(3). In the motions, appellant argued that a re-trial on the indictments would violate his federal and state constitutional rights not to be put in jeopardy twice for the same offense. *See* U.S. Const. amends. 5 & 14; Tex. Const. art. I, § 14. Appellant acknowledged that the trial court "properly decided" that Juror Jacquez was related to him within the third degree, but he argued that no manifest necessity existed for the mistrial since the trial court declared the mistrial without first asking the parties for less drastic alternatives. Appellant argued further that, had he been asked, he would have been willing to proceed to trial with an eleven-member jury, as our decision in *Hatch v. State*, 958 S.W.2d 813

(Tex.Crim.App.1997), allowed. *See* footnote two, *supra*. On August 6, 1999, appellant filed applications for habeas corpus relief, in which applications he made arguments identical to those in his motions to dismiss.

On August 12, 1999, the trial court heard the motions and the applications and denied the requested relief. In doing so, the trial court explained:

"The rulings of the court on [the State's challenge for cause] were basically on the premise that the State was denied its right to use a peremptory challenge because the juror did not answer the question correctly. The court felt like at that time it had no alternative but to grant a new trial. The court does not feel that the *Hatch* case is appropriate in this case. Both the State and the defendant are entitled to a jury of twelve people. *If they both decide and make an agreement to waive that, then it can be waived. But that was not the facts in this case. There was no agreement to proceed between the State and the defendant for eleven jurors,* and the court feels that it made proper rulings in this case."

In interlocutory appeals to the Eighth Court of Appeals, appellant argued that the trial court erred in refusing to grant

---

**1.** The majority holds that "the challenged juror was not, in fact, challengeable for cause because of consanguinity with appellant" and that "[t]he trial court erred in excluding her for that reason." However, appellant has never argued that the trial court erred in finding Juror Jacquez related to him within the third degree of consanguinity, and, therefore, it is inappropriate for us to consider that question. As a reviewing court, we must limit ourselves to questions that were raised in the courts of appeals. *Owens v. State*, 827 S.W.2d 911, 918 n. 7 (Tex.Crim.App.1992).

**2.** In *Ex parte Hernandez*, 906 S.W.2d 931, 932 (Tex.Crim.App.1995), we held that, under Ar-

ticle 36.29(a) of the Texas Code of Criminal Procedure, a felony trial may not proceed with fewer than twelve jurors unless one of the jurors dies or is disabled from sitting. In *Hatch v. State*, 958 S.W.2d 813, 816 (Tex. Crim.App.1997), decided just eighteen months before appellant's trial, we overruled *Hernandez* and held that, under Texas Government Code § 62.201, a felony trial may proceed with fewer than twelve jurors if both parties agree. (Section 62.201 provides: "The jury in a district court is composed of 12 persons, except that the parties may agree to try a particular case with fewer than 12 jurors.")

his motions to dismiss and his applications for habeas corpus relief because a re-trial was prohibited by his federal and state constitutional rights not to be put in jeopardy twice for the same offense. According to appellant, the trial court "abused any discretion it had in declaring a mistrial when it failed to consider [the] less drastic alternativ[e]" of proceeding to trial with eleven jurors. Appellant did not argue that the trial court erred in finding that Juror Jacquez was related to him within the third degree of consanguinity.

On August 31, 2000, the Eighth Court of Appeals rejected appellant's argument and affirmed the trial court's refusal to dismiss the indictments. *Ex parte Fierro*, No. 08–99–00293, 2000 WL 1231491 (Tex.App.-El Paso 2000) (not published); *Ex parte Fierro*, No. 08–99–00294, 2000 WL 1231501 (Tex.App.-El Paso 2000) (not published).[3]

On January 31, 2001, we granted appellant's petition for discretionary review to determine the answer to the only question he raised within it: Whether the court of appeals erred in upholding the trial court's rulings when the trial court found manifest necessity without first asking the parties whether they were willing to proceed to trial with eleven jurors. *See* Tex.R.App. Proc. 66.3(c). In his brief before this Court now, appellant argues that the court of appeals erred in affirming the trial court's refusal to dismiss the indictments because the trial court abused its discretion in declaring a mistrial without first asking the parties whether they were willing to proceed to trial with eleven jurors.[4]

The Double Jeopardy Clause of the Fifth Amendment to the Constitution of the United States guarantees that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." This guarantee was made applicable to the states by the Due Process Clause of the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). For the purposes of the Double Jeopardy Clause, a defendant is "put in jeopardy" in a jury trial when the jury is selected and sworn. *Crist v. Bretz*, 437 U.S. 28, 35, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978).[5] If, after the jury is selected and sworn, a mistrial is declared over the defendant's objection, the Double Jeopardy Clause bars a re-trial unless a manifest necessity existed for the mistrial.[6]

---

**3.** In its opinions, the court of appeals stated that the trial court declared the mistrial on its own motion "[b]ecause the State would not proceed [to trial] with only eleven jurors." Slip ops. at 1. The record reflects, however, that no one in the trial court mentioned the possibility of proceeding to trial with eleven jurors.

**4.** In his brief, appellant cites the guarantees against double jeopardy contained in both our federal and state constitutions. However, because appellant offers no argument or authority as to the protection provided by the state constitutional provision or how that protection differs meaningfully from that provided by the federal constitutional provision, his claim based on the state constitutional provision is inadequately briefed and not properly presented for our review. *Ex parte Granger*, 850 S.W.2d 513, 515 n. 6 (Tex.Crim.App. 1993).

**5.** The point at which a defendant is "put in jeopardy" is usually known as the point at which jeopardy "attaches." *See Ex parte Ward*, 964 S.W.2d 617, 624–625 (Tex.Crim. App.), *cert. denied*, 525 U.S. 823, 119 S.Ct. 66, 142 L.Ed.2d 52 (1998).

**6.** The protection afforded by the Double Jeopardy Clause

"embraces the defendant's valued right to have his trial completed by a particular tribunal. The reasons why this 'valued right' merits constitutional protection are worthy of repetition. Even if the first trial is not completed, a second prosecution may be grossly unfair. It increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an

*Arizona v. Washington,* 434 U.S. 497, 505, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). The prosecutor must demonstrate manifest necessity for any mistrial declared over the defendant's objection. *Ibid.* In other words, the prosecutor has the burden of demonstrating that there are no reasonable alternatives to a mistrial. The determination of whether a manifest necessity exists for a mistrial rests within the sound discretion of the trial court. *Id.* at 514, 98 S.Ct. 824. A trial court abuses its discretion if it finds a manifest necessity for a mistrial without first considering possible alternatives. *Torres v. State,* 614 S.W.2d 436, 440 (Tex.Crim.App.1981).

Since, in the cases at bar, the trial court found one of the jurors to be disqualified, a manifest necessity existed for a mistrial unless both parties agreed to proceed with eleven jurors. *Hatch v. State,* 958 S.W.2d at 816 n. 5. *See* footnote two, *supra.* Appellant argues, however, that the trial court abused its discretion in finding a manifest necessity without first, on its own motion, asking the parties whether they were willing to proceed with eleven jurors. Two decisions, one from the United States Supreme Court and one from this Court, lead me to reject appellant's argument.

In *Arizona v. Washington,* 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717, the defendant was tried in Arizona state court on a charge of murder. During the voir dire examination of prospective jurors, defense counsel made certain improper and prejudicial comments. After opening statements were completed, the prosecutor moved for a mistrial, but the trial court denied the motion. The following morning, the prosecutor renewed his motion.

Both the prosecutor and defense counsel argued the merits of the motion before the trial court, which ultimately granted the motion. The Arizona Supreme Court denied review of the trial court's mistrial ruling. In a subsequent habeas corpus proceeding, a federal district court held that the Double Jeopardy Clause protected the defendant from another trial in part because the trial court, before it granted the mistrial, *did not consider on the record the possible alternatives to a mistrial.* The Ninth Circuit Court of Appeals affirmed. The United States Supreme Court reversed, holding that the record showed that the trial court did not abuse its discretion in finding a manifest necessity for the mistrial:

> "Defense counsel aired improper and highly prejudicial evidence before the jury, the possible impact of which the trial judge was in the best position to assess. The trial judge did not act precipitately in response to the prosecutor's request for a mistrial. On the contrary, evincing a concern for the possible double jeopardy consequences of an erroneous ruling, *he gave both defense counsel and the prosecutor full opportunity to explain their positions on the propriety of a mistrial.* We are therefore persuaded by the record that the trial judge acted responsibly and deliberately, and accorded careful consideration to respondent's interest in having the trial concluded in a single proceeding. Since he exercised 'sound discretion' in handling the sensitive problem of possible juror bias created by the improper comment of defense counsel, the mistrial order is supported by the 'high degree' of necessity which is required in a case

innocent defendant may be convicted. The danger of such unfairness to the defendant exists whenever a trial is aborted before it is completed. Consequently, as a general rule, the prosecutor is entitled to one, and

only one, opportunity to require an accused to stand trial." *Arizona v. Washington,* 434 U.S. 497, 503–505, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978) (footnotes and some punctuation omitted).

of this kind." *Id.* at 835 (emphasis added).

In *Ex parte Brown v. State*, 907 S.W.2d 835 (Tex.Crim.App.1995), the trial court and the parties were faced with a problem: the very limited availability of a key witness for both the State and the defense. In an attempt to solve the problem, defense counsel offered to allow the witness, Lorna Beasley, to testify out of sequence or to allow her supervisor, Manuel Valadez, to testify in her place. The State rejected the proposed alternatives, and the trial court, on its own motion, declared a mistrial on the ground of manifest necessity. Before the defendant could be retried, he sought habeas corpus relief, arguing that re-trial was barred by the Double Jeopardy Clause. The trial court denied relief, and the Second Court of Appeals affirmed. We reversed, explaining that the trial court abused its discretion in finding a manifest necessity for the mistrial:

> "The record clearly reveal two less drastic alternatives which were available to the trial judge in lieu of a mistrial: (1) Beasley was available to testify out-of-sequence ... or (2) Valadez could have testified in Beasley's stead. The trial judge *was aware of these alternatives* but neglected to address them. Moreover, the Court of Appeals did not address the trial judge's failure to consider and rule out these alternatives. Because less drastic alternatives were available, the record does not support the trial judge's conclusion that there was manifest necessity for a mistrial."
> *Id.* at 843 (emphasis in original).

In my view, it is fairly implicit in the *Arizona v. Washington* and *Ex parte Brown* decisions that the trial court's duty to consider possible alternatives to a mistrial is met if the parties have an opportunity to suggest possible alternatives and the trial court carefully considers the alternatives that the parties suggest and that are within the trial court's authority. Contrary to appellant's argument, the trial court itself has no duty to suggest possible alternatives.

The trial court did not abuse its discretion in finding a manifest necessity for the mistrial without first, on its own motion, asking the parties whether they were willing to proceed to trial with eleven jurors. Therefore, the court of appeals did not err in affirming the trial court's denial of appellant's pre-trial motions to dismiss and pre-trial applications for habeas corpus relief. I would affirm the judgments of the court of appeals. Because the majority fails to do so, I respectfully dissent.