# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00241-CR

**Ex parte Edwin Baezotero**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT**
**NO. D-1-DC-05-500314, HONORABLE DONALD LEONARD, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Edwin Baezotero's trial for indecency with a child by exposure ended with the court declaring a mistrial after the jury reported that it was unable to reach a verdict.[1]  Baezotero subsequently applied for a writ of habeas corpus seeking to prevent a retrial on the ground that further prosecution would constitute double jeopardy.  *See* U.S. Const. amend. V; Tex. Const. art. I, § 14.  The district court found the double jeopardy claim to be without merit and denied relief. This appeal followed.

As a general rule, double jeopardy bars a retrial if, after being impaneled and sworn, a trial jury is discharged without reaching a verdict.  *Ex parte Fierro*, 79 S.W.3d 54, 56 (Tex. Crim. App. 2002).  Double jeopardy does not apply, however, if the mistrial was granted on the defendant's motion or with his consent or if the mistrial was required by manifest necessity.  *Id*.

---

[1] The indictment accuses Baezotero of exposing his genitals knowing a child was present and of causing a child to expose her genitals.  *See* Tex. Penal Code Ann. § 21.11(a)(2)(A), (B) (West 2003).

We conclude that there was manifest necessity for the mistrial at issue here. Accordingly, we affirm the district court's order.

## *Background*

Baezotero introduced portions of the reporter's trial record at the hearing below. Testimony began on March 14, 2007. The complainant, who was eleven years old at the time of trial, testified that her mother and Baezotero's wife are sisters. In November 2004, when she was nine, the complainant visited her aunt, uncle, and female cousin at the Baezoteros' home in Austin. After her aunt and cousin fell asleep, Baezotero took the complainant to his computer room and showed her a video of a man and woman having sexual intercourse. Later that night, Baezotero entered the bedroom where the complainant was alone watching television. He asked her to remove her pants and underwear and to spread her legs apart. Frightened, the complainant complied. Baezotero then removed his pants, exposing his penis, and masturbated. He made the complainant promise not to tell anyone what had happened. The other witnesses on this first day of testimony were the complainant's mother and grandmother, who testified to the complainant's outcry in March 2005, and two police officers involved in the investigation of the alleged offenses, who described some of their activities.

On the second day of testimony, the State called one more witness, a psychologist with expertise in the field of child sexual abuse. The witness explained why sexually abused children often fail to report the abuse immediately and why their initial reports will sometimes be incomplete. After the State rested, the defense called four witnesses. Baezotero's wife testified to the hard feelings between Baezotero and her sister, the complainant's mother, and her threats to get

2

back at him. She also testified that the complainant did not spend the night at the Baezotero house in November 2004. Baezotero's other sister-in-law testified that the complainant had a reputation for being a liar. A third defense witness testified that he and Baezotero were staff sergeants in the Marine Corps who were taking classes at the University of Texas as part of an officer training program. Baezotero offered similar testimony. Although Baezotero was not questioned about the complainant's accusations by his own counsel, he testified during cross-examination that he did not recall the complainant ever spending the night at his house. The parties agreed below that the jury heard approximately ten to eleven hours of testimony.[2]

The jury began its deliberations at 3:48 p.m. on March 15, 2007. At 4:50 p.m., the jury returned to the courtroom to hear a portion of Baezotero's testimony read. At about 6:30 p.m., the jury foreman sent the judge a note saying that the jury was "hopelessly deadlocked." Baezotero's counsel asked for a mistrial, which was refused. Then, over the objection of defense counsel, the court gave the jury what the court described as a "pretty middle" *Allen* charge. *See Allen v. United States*, 164 U.S. 492 (1896). In this charge, the court instructed the jurors that a mistrial would be declared if they could not reach a unanimous verdict, and that a future jury would likely hear the same evidence and find the questions raised just as difficult to answer. The court instructed the jury to "continue deliberations in an effort to arrive at a verdict that is acceptable to all members of the jury if you can do so without doing violence to your conscience." The court then allowed the jurors to go home for the night.

---

[2] In his brief, Baezotero's counsel asserts that the testimony took twenty-eight hours. He cites no record evidence for this assertion, which is contrary both to his statement under oath at the hearing and to the trial court's findings of fact.

3

The jury resumed its deliberations the following morning. In response to several more requests from the jury, passages from the testimony of the complainant, Baezotero, and Baezotero's wife were read. After approximately five more hours of deliberations, the foreman sent the judge another note saying that the jury remained deadlocked, "positions on both sides have grown even more entrenched as the morning has progressed," and "[t]he jury feels that additional deliberations will prove fruitless." At this point, the court expressed the opinion that, "in light of what has happened so far . . . I don't think there is any need to go ahead and push them any further." The prosecutor said that the State had no objection to a mistrial. Baezotero's counsel objected to a mistrial, however, despite having requested one the day before. Asked to state the basis for his objection, counsel said, "I just don't want a mistrial."

At the conclusion of the habeas corpus hearing, the court made these findings:

> We heard the case in ten to eleven hours. They deliberated for seven. I had a doctor's appointment.[3] I asked Judge Bender to watch my jury; to accept a verdict if they had one; and if they announced they were hung again for the second time, that he had my permission to mistry the case; and he apparently followed my instructions thoroughly.
>
> The second jury note indicating a hung jury clearly shows they were not going to reach a verdict, didn't have an intention to try, and further litigation was hopeless—or further deliberation was hopeless.
>
> . . . . [T]he case was fairly tried in a reasonable time; the jury deliberated a reasonable time; they twice announced they couldn't reach a verdict; and it was fit and proper that the mistrial be granted at that time.

---

[3] The Honorable Donald Leonard, who conducted the hearing on Baezotero's habeas corpus application, also presided at the trial.

*Discussion*

The constitutional double jeopardy protection embraces the defendant's right to have his trial completed by a particular tribunal. *Arizona v. Washington*, 434 U.S. 497, 503 (1978). When a mistrial is declared over the defendant's objection after the jury is sworn, a retrial is barred by double jeopardy unless there was manifest necessity for the mistrial. *Id*. at 505. One necessity for a mistrial that has long been recognized is the trial judge's belief that the jury is genuinely deadlocked and unable to reach a verdict. *Id*. at 509. This rule accords recognition to society's interest in giving the prosecution one complete opportunity to convict those who have violated its laws. *Id*. In Texas, this principle is embodied in article 36.31, which grants trial courts the discretion to discharge a jury when "it has been kept together for such time as to render it altogether improbable that it can agree." Tex. Code Crim. Proc. Ann. art. 36.31 (West 2006).

The trial judge is afforded broad discretion in deciding whether the discharge of a deadlocked jury is manifestly necessary. *Washington*, 434 U.S. at 509. If a retrial of the defendant were barred whenever an appellate court viewed the necessity for a mistrial differently from the trial judge, there would be a danger that the latter, considering the serious consequences of an erroneous ruling, would employ coercive means to break the jury's apparent deadlock and thereby frustrate the public interest in just judgments. *Id*. at 509-10. Therefore, the trial judge's decision to declare a mistrial when he considers the jury deadlocked is accorded great deference by a reviewing court. *Id*. at 510.

The exercise of discretion in declaring a mistrial when the jury cannot agree is determined by the amount of time the jury deliberates considered in light of the nature of the case and the evidence. *Beeman v. State*, 533 S.W.2d 799, 800 (Tex. Crim. App. 1976);

5

*Montemayor v. State*, 55 S.W.3d 78, 87 (Tex. App.—Austin 2001, pet. ref'd). The "nature of the case and the evidence" means the type and complexity of the evidence, whether expert testimony is involved, the number of witnesses and exhibits, the complexity of the charge, whether the jury moved toward agreement during deliberations, and the nature and extent of the jury's communication with the court. *Torres v. State*, 961 S.W.2d 391, 393 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd).

The testimony in this cause was straightforward and easily understood: the complainant described Baezotero's alleged indecent actions and he, in effect, denied the alleged conduct. For the jury, the only difficult issue was whether to believe the complainant or Baezotero. There was an expert witness, but he merely provided background information regarding the psychological effects of child sexual abuse. The substance of the other witnesses' testimony was to affirm the credibility of either the complainant or Baezotero. The jury charge was equally straightforward, containing the instructions commonly found in cases such as this and asking the jury only to decide if Baezotero exposed his genitals in the complainant's presence or caused the complainant to expose her genitals.[4]

After one hour of deliberations, the jury asked to hear a portion of the testimony, and after two hours, the jury reported that it was "hopelessly deadlocked." The court gave the *Allen* charge and allowed the jurors to go home for the evening. Upon their return the following day, the jurors made six more requests to hear portions of the testimony before finally reporting, after five

---

[4] The charge may have violated the jury unanimity requirement by failing to require the jurors to agree whether Baezotero exposed his genitals or caused the complainant to expose her genitals. *See Pizzo v. State*, 235 S.W.3d 711, 719 (Tex. Crim. App. 2007); *Ngo v. State*, 175 S.W.3d 738, 747-49 (Tex. Crim. App. 2005).

additional hours of deliberations, that they remained deadlocked. In fact, they reported that both sides had become "more entrenched" and that additional deliberations would be "fruitless." Although the record suggests that the jurors were dedicated to their task, there is no evidence that they were able to move toward agreement, even after receiving the *Allen* charge.[5]

Baezotero argues that instead of discharging the jury, the trial court should have given another, more forceful *Allen* charge and required further deliberations. He also made this argument at the hearing below, where his counsel stated that he had understood the judge to say that this was what he planned to do if the jury remained deadlocked. This was disputed by Judge Leonard in his findings of fact, where he said, "I only have one [*Allen* charge]" and "[t]here was never any intention to give another." It is also contradicted by the trial record, which shows that Baezotero's counsel not only failed to request a second *Allen* charge, he objected when the first *Allen* charge was given and asked for the mistrial that he later opposed. Under the circumstances, it was well within the trial court's discretion to conclude that a second *Allen* charge was not warranted and might be unduly coercive.

Keeping in mind the great deference that must be afforded the trial court's determination that a jury is deadlocked, and considering the nature of the case and the evidence, the time the jury spent deliberating compared to the time it took to hear the testimony, and the note indicating that the jury remained deadlocked even after receiving an *Allen* charge, we hold that the trial court did not abuse its discretion by discharging the jury and declaring a mistrial at Baezotero's

---

[5] The record reflects that the final vote of the jury was nine to three to convict. There is no evidence as to whether this vote had changed during the seven hours of deliberations.

first trial.  Because there was a manifest necessity for the mistrial, a retrial will not constitute double jeopardy.

The order denying habeas corpus relief is affirmed.

_____

Diane Henson, Justice

Before Chief Justice Law, Justices Waldrop and Henson

Affirmed

Filed:   January 17, 2008

Do Not Publish