COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



|  |  |
|---|---|
| § | No. 08-15-00013-CR |
| § | |
| EX PARTE: HECTOR MACIAS | Appeal from |
| § | |
| | County Criminal Court No. 4 |
| § | |
| | of El Paso County, Texas |
| § | |
| | (TC # 20110C03140) |
| § | |

## **O P I N I O N**

The Texas Rules of Appellate Procedure provide that "[o]nce the record has been filed in the appellate court, *all further proceedings in the trial court--except as provided otherwise by law or by these rules--will be suspended until the trial court receives the appellate-court mandate*. [Emphasis added]. TEX.R.APP.P. 25.2(g). This appeal arises from the rather unusual circumstance of a criminal case proceeding to trial before the mandate was issued by this court from an earlier interlocutory appeal in the same case. Just before closing argument was to begin, the trial court was informed that the mandate had not issued. The judge then stopped the trial. Hector Macias, the defendant below and appellant here, claims that because a jury had been sworn and empaneled, jeopardy attached and he cannot be tried a second time. The State contends that because the trial court lacked jurisdiction to try the case, the trial was a nullity such that jeopardy never attached. The trial court agreed with the State, leading to this second appeal.

We conclude, however, that based on prior precedent from this Court, *In re State,* 50 S.W.3d 100, 102 (Tex.App.--El Paso 2001, orig. proceeding), the trial court had jurisdiction to conduct the trial. Accordingly, habeas relief must be granted based on the Double Jeopardy Clause to the United States Constitution.

## FACTUAL SUMMARY

This case arises out of a 2011 charge that Macias struck his wife with his hand causing her bodily injury. When police responded to the domestic disturbance call giving rise to his arrest, Macias told an officer at the scene that "he had gone too far." Macias moved to suppress that statement claiming it was the result of an improper custodial interrogation. The trial court granted the suppression motion, leading the State to file an interlocutory appeal on March 27, 2012.[1] It also filed a motion to stay further trial court proceedings. On April 11, 2013, we granted that motion and stayed any further proceedings pending further order.

On October 16, 2013, we issued our opinion and judgment reversing the trial court's suppression of the officer's statement. *State v. Macias*, 08-12-00107-CR, 2013 WL 5657979 (Tex.App.--El Paso Oct. 16, 2013, no pet.)(not designated for publication). The same day-- October 16, 2013--the trial court ordered the case to be set for trial on January 16, 2014. Our mandate from the earlier appeal, however, did not issue until January 30, 2014.[2]

---

[1] TEX.CODE CRIM.PROC.ANN. art. 44.01(a)(5)(West Supp. 2015) gives the State the right to appeal a trial court's decision to suppress evidence when the prosecutor can certify that the appeal is not taken for the purpose of delay, and the evidence is of substantial importance to the case.

[2] Following our opinion of October 6, 2013, Macias would have had thirty days to file a petition for discretionary review with the Texas Court of Criminal Appeals, making that filing due on November 15, 2013. *See* TEX.R.APP.P. 68.2(a). He is accorded an additional fifteen days to file a motion to extend the time to file a petition for review, making the last day to pursue an appeal of our earlier decision December 2, 2013. *See* TEX.R.APP.P. 68.2(c). Under TEX.R.APP.P. 18.1(a)(1)(B), the clerk of this Court cannot issue the mandate until ten days from the last date to file a motion to extend the time to file a petition for discretionary review, if no petition or motion was filed. Accordingly, the mandate could not have issued until sometime after December 12, 2013. Although not published in our Internal Operating Procedures, as a matter of practice, this Court does not issue the mandate until at least seventy-five days after the date of our judgment (assuming no further appeal step has been taken). The parties can request that we

2

The case proceeded to trial on January 16, 2014.  Subpoenas were issued, a jury was seated, the State presented its witnesses, Munoz presented his witness, and both parties closed and rested.  As closing arguments were about to begin, one of the State's attorneys informed the trial court that the mandate had yet to issue from this Court on the first appeal.  The trial court verified the absence of the mandate and dismissed the jury.  The trial judge believed that he did not have the authority to declare a mistrial, as the entire proceeding was conducted without the jurisdiction to do so.

Following the trial, Macias filed an Application for Writ of Habeas Corpus contending that a jury had been empaneled and sworn, and that jeopardy attached such that he could not be tried a second time.  Macias had made the same claim at the time that the trial court dismissed the jury.  The trial court denied the application and this appeal follows.

## **DOUBLE JEOPARDY**

In his sole issue, Macias contends that the Fifth Amendment to the United States Constitution prohibits a retrial of his case.  The Double Jeopardy Clause protects a criminal defendant from repeated prosecutions for the same offense.  U.S. Const. art. V; *Oregon v. Kennedy*, 456 U.S. 667, 671, 102 S.Ct. 2083, 2087, 72 L.Ed.2d 416 (1982).  The Double Jeopardy Clause affords a criminal defendant a "'valued right to have his trial completed by a particular tribunal.'"  *Kennedy*, 456 U.S. at 671-72, 102 S.Ct. at 2087; *see Ex parte Lewis*, 219 S.W.3d 335, 371 (Tex.Crim.App. 2007).  An underlying rationale is that the "State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense . . . enhancing the possibility that even though innocent he may be found guilty."  *Green v. United States*, 355 U.S. 184, 187-188, 78 S.Ct. 221, 223, 2 L.Ed.2d 199

issue the mandate earlier.  *See* TEX.R.APP.P. 18.1(c)(allowing earlier issuance of mandate if the parties agree, or upon motion stating good cause).

3

(1957). And while a prosecutor is generally entitled to one, and only one, opportunity to have the defendant stand trial, the rub comes when that first trial must be terminated for some reason. *Arizona v. Washington*, 434 U.S. 497, 505, 98 S.Ct, 824, 830, 54 L.Ed.2d 717 (1978)(holding that although a retrial is absolutely prohibited when a trial ends in an acquittal or a conviction, a retrial is not "automatically barred when a criminal proceeding is terminated without finally resolving the merits of the charges against the accused.").

The reason this trial ended is decidedly unusual. We view the question before us as whether the trial court had the jurisdiction to conduct a trial on January 16, 2014, such that the proceeding held can be viewed as a "trial" for double jeopardy purposes. A related question is whether the reason the trial terminated--the trial court's *belief* that it lacked jurisdiction--is sufficient by itself to preclude the application of double jeopardy.

## ADEQUACY OF THE BRIEFING

Before addressing the merits, however, we turn to the State's first argument on appeal which claims that Macias' briefing is inadequate and precludes us from reaching the merits. The State specifically argues that Macias has misstated the standard of review, failed to cite any authority for the jurisdictional question, and failed to apply the facts to the law. Under the circumstances, we find that the brief substantially complies with TEX.R.APP.P. 38.1 and we will review the merits.

We do agree, however, with several tenants of the State's argument. For instance, we agree with the proposition enunciated in *Cavender v. State*, 42 S.W.3d 294, 296 (Tex.App.--Waco 2001, no pet.) that "it is a waste and improper use of judicial resources [for an appellate court] to brief an appellant's case for him." The Rules of Appellate Procedure provide clear guidelines for the form of an appellant's brief. TEX.R.APP. P. 38.1. A reasonable checklist for

4

the appropriate elements of an appellant's brief in a criminal case is set out in *Walder v. State*, 85 S.W.3d 824, 827 (Tex.App.--Waco 2002, no pet.). Among those elements include an appropriately stated standards of review, identification of governing legal principles, and the application of those principles to the facts of the case.[3]

We also agree that Macias cites to a standard of review that is correct in part, but certainly incomplete in the context of this case. Macias correctly states that as the applicant he carries the burden to prove any facts necessary to obtain relief by a preponderance of the evidence. *Ex parte Richardson*, 70 S.W.3d 865, 870 (Tex.Crim.App. 2002). Macias also correctly notes that when those facts involve matters of credibility and demeanor, we afford almost total deference to the trial court's determinations which are supported by the record. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997)(en banc). The same is true of mixed

---

[3] The Waco court suggested an adequate brief should contain all of the following elements:

1. counsel should state the issue or point presented for review in a concise manner; [Tex.R.App. P.] 38.1(e);

2. counsel should identify the evidence or other matters in the record (*e.g.,* pleadings, arguments, or objections) pertinent to the issue or point 'with appropriate citations . . . to the record'; *Id.* 38.1(h);

3. counsel should explain how the issue or point presented has been preserved for appellate review or why no preservation is required 'with appropriate citations to authorities and to the record'; *Id.;*

4. counsel should state the appropriate standard of appellate review 'with appropriate citations to authorities'; *Id.;*

5. counsel should identify the legal principles which govern the issue or point presented 'with appropriate citations to authorities'; *Id.;*

6. counsel should clearly and concisely explain how these legal principles apply to the facts of the case as set out in number 2 above; *Id.;*

7. counsel should explain whether the issue or point presents a constitutional or non-constitutional error 'with appropriate citations to authorities'; *Id.;* and

8. counsel should explain how this error harmed his client under the appropriate analysis provided by Rule 44.2 'with appropriate citations to authorities and to the record.' *Id.*

*Walder*, 85 S.W.3d at 827.

question of law and fact, if the facts touch issues of credibility and demeanor. *Id*. This level of

appellate deference is referred to as a review for abuse of discretion. *Id*.; *Garcia v. State*, No.

08-03-00405-CR, 2005 WL 1536233, at *1 (Tex.App.--El Paso June 30, 2005, no pet.)(not

designated for publication). Macias' brief recites that the trial court's decision to grant or deny

habeas relief is committed to its discretion, which must be upheld absent an abuse of discretion.

He frames the issue on appeal as whether the trial court abused its discretion in failing to grant

his application for habeas corpus.

Nonetheless, the State correctly points out that mixed questions of law and fact *not*

implicating credibility or demeanor are reviewed *de novo* by the appellate court. *Guzman*, 955

S.W.2d at 89. *De novo* review does not embody the abuse of discretion standard of review.

*Guzman*, 955 S.W.2d at 89. Here, the only factual questions involve dates and events that are

manifest from the record, such as when the mandate issued, and what transpired at the "trial."

Accordingly, we agree with the State that the precise standard of review governing this appeal is

*de novo*, because the issue before us is a legal question applied to undisputed facts. Nonetheless,

we part ways with the State in its conclusion that Macias should forfeit the right to seek review

because he imprecisely stated the standard of review.

The guiding standard for an appellate brief is that it should "acquaint the court with the

issues in a case and to present argument that will enable the court to decide the case . . . ."

TEX.R.APP.P. 38.9. Accordingly, "substantial compliance" with the rule is sufficient. *Id*.; *see

also Tello v. Bank One, N.A.*, 218 S.W.3d 109, 121-22 (Tex.App.--Houston [14th Dist.] 2007, no

pet.)("While well-organized and sharply focused writing is always appreciated, that is not the

standard by which we determine the legal adequacy of appellate briefs."). Several of the cases in

the "Standard of Review" section of Macias' brief set out the correct and complete standard of

6

review. We also note that the abuse of discretion standard which Macias recites would hold him to a higher burden. In this instance, we decline to hold that Macias has forfeited his argument altogether.

The State also argues that Macias' brief is deficient in that he has not cited any case law on the jurisdictional argument that the State advanced below, and which the trial court accepted, in overruling the application for habeas relief. Macias indeed has not taken that issue head-on by citing case law directly addressing whether the trial court had the jurisdiction to try the case absent our mandate. Instead, Macias cites a number of cases, which we note below, for the proposition that a person is subject to double jeopardy when the trial court commits "egregious" judicial error in terminating the trial. He further argues that conducting a trial in the absence of jurisdiction was such an egregious error.

The jurisdictional question the State raises is really its defensive counter-argument. Macias makes out a prima facie double jeopardy argument by showing that a jury was sworn and empaneled, that the proceeding then terminated, and now the State intends to continue the prosecution. Macias makes that argument in his brief with appropriate citations to the record and the case law. The State counters that argument by contending that the trial was something of a legal fiction because the lower court was without jurisdiction. Macias could have chosen to pre-empt that argument in his brief on the merits, or waited to respond to the argument, if he could, in a reply brief, or ignore it at his peril. But his response to the State's position goes to the merits of the appeal, and not the briefing sufficiency of his primary argument.

A party's brief must contain a clear and concise argument with appropriate citations to legal authority and to the record. TEX.R.APP.P. 38.1(i); *Rhoades v. State*, 934 S.W.2d 113, 119 (Tex.Crim.App. 1996). Appellant's brief was adequate to state his case, and we decline the

State's invitation to find the argument forfeited. *See Bufkin v. State*, 179 S.W.3d 166, 173-74 (Tex.App.--Houston [14th Dist.] 2005), *aff'd*, 207 S.W.3d 779 (Tex.Crim.App. 2006)("it is the court's prerogative, not the parties', to insist on unerring compliance with the briefing rules").

## DID JEAPORDY ATTACH?

Undoubtedly, the trial court here empaneled and swore a jury, which is the point at which jeopardy attaches. *Martinez v. Illinois*, __ U.S. __, 134 S.Ct. 2070, 2072, 188 L.Ed.2d 1112 (2014)(noting "bright-line" rule that jeopardy attaches once a jury is empaneled and sworn). And undoubtedly, that proceeding terminated with the State now desirous of again resetting the case for trial. In this circumstance, Macias is placed in double jeopardy unless the "trial" is deemed not be a trial at all because the lower court lacked any jurisdiction to conduct the proceeding.

Abundant authority holds that actions taken by a trial court without jurisdiction are null and void. *Berry v. State*, 995 S.W.2d 699, 700 (Tex.Crim.App. 1999)(trial court lacked jurisdiction to issue supplemental findings of fact issued while case was on appeal and those findings were null and void); *Green v. State,* 906 S.W.2d 937, 939 (Tex.Crim.App. 1995)(it is axiomatic that where there is no jurisdiction "the power of the court to act is as absent as if it [the court] did not exist."); *Garcia v. Dial*, 596 S.W.2d 524, 530 (Tex.Crim.App. 1980)(once the trial court dismissed a pending indictment, it lost jurisdiction and any subsequent order reinstating the indictment was null and void).

The United States Supreme Court in *Martinez* raised, but did not confirm, that the lack of jurisdiction might be an exception to the rule that jeopardy attaches when a jury is sworn:

> Some commentators have suggested that there may be limited exceptions to this rule--*e.g.,* where the trial court lacks jurisdiction or where a defendant obtains an acquittal by fraud or corruption. See 6 W. LaFave, J. Israel, N. King, & O. Kerr,

8

> Criminal Procedure § 25.1(d) (3d ed. 2007). The scope of any such exceptions is not presented here.

*Martinez*, 134 S. Ct. at 2075 n.3. We find sufficient authority (which Macias does not challenge) that holds that a trial conducted without the jurisdiction to do so is no trial at all for double jeopardy purposes. *See Kepner v. U.S.*, 195 U.S. 100, 129, 24 S.Ct. 797, 49 L.Ed. 114 (1904)("An acquittal before a court having no jurisdiction is, of course, like all the proceedings in the case, absolutely void, and therefore no bar to subsequent indictment and trial in a court which has jurisdiction of the offense."); *Hoang v. State*, 872 S.W.2d 694, 698 (Tex.Crim.App. 1993)("And, it has long been the position of this Court that a void judgment of conviction does not bar a successive prosecution for the same offense under State or federal principles of double jeopardy."); *Gallemore v. State*, 312 S.W.3d 156, 162 (Tex.App.--Fort Worth 2010, no pet.)("Appellant's guilty plea in the first proceeding was void because the trial court did not have jurisdiction over the first proceeding . . . . And 'a void judgment of conviction does not bar a successive prosecution for the same offense under State or federal principles of double jeopardy.'")(internal citations omitted); *In the Matter of D.M.*, 611 S.W.2d 880, 883 (Tex.Civ.App.--Amarillo 1980, no pet.)(criminal trial held in district court which was interrupted when court learned defendant was a juvenile, and thus denied the district court's jurisdiction, did not bar subsequent prosecution in appropriate court). Accordingly, we turn first to the question of whether the trial court had jurisdiction to conduct the trial on January 16, 2013.

As we alluded to in the introduction, the State premises its contention that the trial court lacked jurisdiction on TEX.R.APP.P. 25.2(g) which states that "[o]nce the record has been filed in the appellate court, all further proceedings in the trial court--except as provided otherwise by law

or by these rules--will be suspended until the trial court receives the appellate-court mandate."[4] On its face, Rule 25.2(g) seemingly denied the trial court any jurisdiction to act from May 8, 2012 (the date the record was filed in the earlier appeal) to January 30, 2013 (the date the mandate issued).

Case law, however, has applied a gloss to the wording of Rule 25.2(g), which we cannot ignore. If an appeal arises from a *final conviction*, Rule 25.2(g) indeed denies the trial court the ability to conduct all but the most limited proceedings until issuance of the mandate. *Farris v. State*, 712 S.W.2d 512, 514 (Tex.Crim.App. 1986)("A trial court's power to act in a given case ends when the appellate record is filed in the court of appeals, except for matters concerning bond."); *see also Green v. State*, 906 S.W.2d 937, 939 (Tex.Crim.App. 1995). But this Court has held that the rule applies differently in an *interlocutory* appeal when there is no final conviction. *In re State*, 50 S.W.3d 100, 102 (Tex.App.--El Paso 2001, orig. proceeding); *see also Peters v. State*, 651 S.W.2d 31 (Tex.App.--Dallas 1983, pet. dism'd).

*In re State* arose out of a trial court's order suppressing a piece of evidence which led to an interlocutory appeal. 50 S.W.3d at 101. During the pendency of that appeal, the trial court conducted additional hearings on the suppression of other evidence. *Id*. at 102. The State

---

[4] The rule can be traced back through several predecessors, including TEX.R.APP.P. 25.2(e) and 40(b), which were worded essentially the same. An even earlier predecessor is found in TEX.CODE CRIM.PROC.ANN. art. 44.11 which read:

> Upon the appellate record being filed in the court of appeals or the Court of Criminal Appeals, all further proceedings in the trial court, except as to bond as provided in Article 44.04, shall be suspended and arrested until the mandate of the appellate court is received by the trial court. In cases where the record or any portion thereof is lost or destroyed it may be substituted in the trial court and when so substituted the record may be prepared and transmitted to the court of appeals or the Court of Criminal Appeals as in other cases.

Act of May 27, 1965, 59th Leg., R.S., vol. 2, ch. 722, 1965 TEX.GEN.LAWS 317, 513, *amended by* Act of May 19, 1967, 60th Leg., R.S., ch. 659, § 31, 1967 TEX.GEN.LAWS 1732, 1748, *amended by* Act of June 1, 1981, 67th Leg., R.S., ch. 291, § 129, 1981 TEX.GEN.LAWS 761, 815. Article 44.11 was finally repealed by the Court of Criminal Appeals effective September 1, 1986 with the adoption of Rules of Appellate Procedure. *See* Act of May 27, 1985, 69th Leg., R.S., ch. 685, 1985 TEX.GEN.LAWS 2472.

pursued a mandamus challenging the second suppression order and contended, as it does here, that the trial court was without jurisdiction to hear additional matters so long as the first interlocutory appeal was before this court. We disagreed and wrote that "[d]espite [Rule 25.5(g)'s] broad language, however, we find it does not apply to interlocutory appeals where no final judgment has been entered." *Id.* at 102.

*In re State* involved jurisdiction to conduct a second suppression hearing, while this case involves jurisdiction over a trial on the merits. But that distinction is of no import based on our earlier rationale. We principally relied on *Peters v. State*, 651 S.W.2d 31 (Tex.App.--Dallas 1983, pet. dism'd), which holds "an appeal from a preliminary order does not suspend the trial court's power *to proceed on the merits*." [Emphasis added]. *Id.* at 33. In *Peters*, the defendant had been placed on deferred adjudication, thus there was no final conviction. He was assessed a fine and when he could not, or would not pay the fine, he was put in jail. *Id*. at 32. He then filed a habeas proceeding contending that the fine was illegal because he had never been finally convicted. *Id*. While the habeas application was on appeal, the State moved to have him adjudicated guilty for failure to pay the fine, and the trial court did so, entering a finding of guilt. *Id*. On appeal from that finding, he claimed that the pending habeas appeal denied the trial court the jurisdiction to make the finding of guilt. In an opinion by Justice Guittard, the court disagreed, reasoning that Article 44.11 (the predecessor to 25.2(g)) had never been applied to pre-conviction habeas corpus. *Id.* at 33.

Thus *Peters* and *In re State* stand for the proposition that pending an interlocutory appeal, the trial court retains jurisdiction over the case, even as to conducting a final hearing on the merits. Though rarely cited, we find no contrary case law authority to either *In re State* or *Peters*. The Dallas Court of Appeals recently relied on its earlier decision in *Peters*. *State v.*

11

*Vardeman*, 05-13-00241-CR, 2013 WL 4033796, at \*4 (Tex.App.--Dallas Aug. 8, 2013, no pet.)(mem. op.)(not designated for publication)("In contrast, during an interlocutory appeal of a pretrial ruling, such as the current case, the trial court retains jurisdiction to enter orders germane to the case."). Two other courts of appeals have recognized the distinction between interlocutory appeals and appeals from final judgments in the context of a trial court's continuing jurisdiction. *Ex parte Lucas*, 14-12-00289-CR, 2013 WL 817264, at \*5 (Tex.App.--Houston [14th Dist.] Mar. 5, 2013, no pet.)(mem. op.)(not designated for publication)("[Rule 25.2(g)] has not been interpreted to apply to interlocutory appeals, however."); *LeBlanc v. State*, 679 S.W.2d 544, 547 (Tex.App.--Beaumont 1984, pet. ref'd)("We have carefully read *Peters v. State, supra,* and feel that it is well-reasoned and correctly decided.").

In supplemental briefing, the State urges that we should not follow *In re State* for two reasons. First, it contends that *In re State* was erroneously based on a rule of civil appellate procedure for which there is no criminal rule counterpart. And indeed, *In re State* cites as "guidance" TEX.R.APP.P. 29.5 which governs interlocutory appeals in civil cases. 50 S.W.3d at 103. That rule provides that while an interlocutory appeal is pending, the trial court has continuing jurisdiction over the case so long its actions are consistent with the appellate court's temporary orders, and the trial court does not interfere with or impair "the jurisdiction of the appellate court or effectiveness of any relief sought or that may be granted on appeal." *Id*. We did not cite the rule as controlling authority, nor do we do so here. The civil rule highlights an obvious corollary to the trial court's continued jurisdiction: when an interlocutory appeal is pending, the trial court cannot conduct further proceedings that undermine the relief being sought on appeal. That concern is not raised here, as the trial court admitted into evidence the statement which our earlier decision held had been erroneously suppressed.

12

The State also contends that the primary case upon which *In re State* relies, *Peters v. State,* has been undermined by intervening changes in the law. Specifically, the State contends that its ability to seek interlocutory appeals, first granted in 1987, renders the earlier decided *Peters* case as unreliable precedent. The State gained the right to file interlocutory appeals in limited situations with the amendment of Article 44.1 in 1987. Act of June 17, 1987, 70th Leg., R.S., vol. 2, ch. 382, 1998 TEX.GEN.LAWS 1884. Prior to that date, interlocutory appeals existed, but only as habeas corpus proceedings brought by criminal defendants. *See Wright v. State*, 969 S.W.2d 588, 589 (Tex.App.--Dallas 1998, no pet.)(outlining several limited areas where defendants could pursue pretrial habeas corpus appeals prior to a conviction); Sara Rodriguez, *Appellate Review of Pretrial Requests for Habeas Corpus Relief in Texas*, 32 TEX.TECH L.REV. 45, 53 (2000)(same). We fail to see, however, why allowing the State to also bring an interlocutory appeal would change the underlying logic of *Peters*.

The State also notes that the exceptions clause in Rule 25.2(g) is now broader than in the prior iteration of the rule when *Peters* was decided. *See Taylor v. State*, 163 S.W.3d 277, 283 (Tex.App.--Austin 2005, pet. dism'd)(recognizing same). Former Article 44.11 made exception for only matters concerning the bond and approving the appellate record. Act of May 27, 1965, 59th Leg., R.S., vol. 2, ch. 722, 1965 TEX.GEN.LAWS 317, 513. The present exceptions clause now includes anything "as provided otherwise by law or these rules." TEX.R.APP.P. 25.2(g). But if anything, the broader language of the exception clause allows for more, and not fewer, exceptions under the rule.

The State offers us no rationale for distinguishing *In re State*. Without explicitly stating as much, it asks that we overrule our earlier case. Under *stare decisis*, however, courts must have a strong preference for adhering to past decisions. *Malik v. State*, 953 S.W.2d 234, 236

13

(Tex.Crim.App. 1997)("Often, it is better to be consistent than right."); *In re Caballero*, 441 S.W.3d 562, 576 (Tex.App.--El Paso 2014, orig. proceeding)("We also must emphasize that *stare decisis* results in predictability in the law, which allows people to rationally order their conduct and affairs."). We might overrule existing precedent when the original rule or decision: (1) was flawed from the outset; (2) the rule produces inconsistent results; (3) the rule conflicts with other precedent; (4) it regularly produces results that are unjust, unanticipated, or unnecessarily burdensome on the system; or (5) the reasons that support the rule have been undercut with the passage of time. *Ex parte Lewis*, 219 S.W.3d 335, 338 (Tex.Crim.App. 2007). The State has not made these showings here. Applying *In re State*, we conclude that the trial court never lost continuing jurisdiction over the case simply because the State brought an interlocutory appeal over the suppression of evidence.

In a supplemental letter brief filed by the State, it also urges that we consider the impact of TEX.CODE CRIM.PROC.ANN. art. 36.11 (West 2007) which in relevant part states:

> If it appears during a trial that the court has no jurisdiction of the offense, . . . the jury shall be discharged. The accused shall also be discharged, but such discharge shall be no bar in any case to a prosecution before the proper court for any offense unless termination of the former prosecution was improper.

*Id*. The last clause renders the provision inapplicable when the "termination of the former prosecution was improper." *Id*. That proviso only returns us to the question of whether or not the trial court was correct in concluding that it had no jurisdiction to conduct the trial. If the trial court had jurisdiction to conduct the trial, the termination of the trial was improper if made on that basis, and the statute is then of no help to the State. Because we have concluded that the trial court had jurisdiction, we also must conclude that the termination of the trial was improper and Article 36.11 does not apply.

## MANIFEST NECESSITY

Determining whether jeopardy attaches is the beginning and not the end of the double jeopardy inquiry. *Martinez*, 134 S.Ct. at 2076. The next question involves *how* the proceeding was terminated. If the trial ended in an acquittal, then the constitutional protection against double jeopardy is surely implicated. *See Washington*, 434 U.S. at 505; *State v. Moreno*, 294 S.W.3d 594, 597 (Tex.Crim.App. 2009). If the jury is discharged without reaching a verdict, then as a general rule, double jeopardy will also still bar a re-trial. *Brown v. State,* 907 S.W.2d 835, 839 (Tex.Crim.App. 1995). This general rule is grounded in the premise that:

> Even if the first trial is not completed, a second prosecution may be grossly unfair. It increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted.

*Washington,* 434 U.S. at 503-04, 98 S.Ct. 824, *citing United States v. Jorn*, 400 U.S. 470, 483, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971)(plurality opinion) and *Green*, 355 U.S. at 187-88. But there are exceptions to this general rule such as when the defendant consents to a re-trial, or when the trial is terminated by "manifest necessity." *Washington*, 434 U.S. at 505.

The Supreme Court has declined to formulate precise categorical rules defining manifest necessity. *See Jorn*, 400 U.S. at 480. The court has stated that manifest necessity is limited to "very extraordinary and striking circumstances . . . ." *Downum v. United States*, 372 U.S. 734, 736, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963); *see also Ex parte Little*, 887 S.W.2d 62, 65 (Tex.Crim.App. 1994); *Torres v. State*, 614 S.W.2d 436, 442 (Tex.Crim.App. 1981).

Manifest necessity generally arises in one of three circumstances: (1) "when the particular circumstances giving rise to the declaration render it impossible to arrive at a fair verdict before the initial tribunal," (2) "when it is simply impossible to continue with trial," or (3) "when any verdict that the original tribunal might return would automatically be subject to

reversal on appeal because of trial error." *Ex parte Garza*, 337 S.W.3d 903, 909 (Tex.Crim.App. 2011). In this case, the trial court terminated the trial based on the belief that it was without jurisdiction to continue the trial, a situation which if true would have made any conviction subject to reversal on appeal. The twist in this case is that we have determined, as discussed above, that the trial court's conclusion about its jurisdiction was ultimately incorrect, though we think not unreasonably so, given the text of Rule 25.2(g) and the sparsity of published cases on the issuance of mandates following interlocutory appeals.

Whether the trial court acts appropriately in terminating a trial is fact specific and "each case must turn on its facts." *Downum,* 372 U.S. at 736. We ordinarily give a trial judge's assessment of manifest necessity great deference. *Washington,* 434 U.S. at 514-16; *Maydon v. State*, 141 S.W.3d 851, 856 (Tex.App.--Corpus Christi 2004, no pet.). Nonetheless, the most analogous authority we find suggests that an error of law, even if understandable, does not present manifest necessity supporting the termination of a trial.

In *Ex parte Fierro*, 79 S.W.3d 54, 56-57 (Tex.Crim.App. 2002), for instance, the parties discovered during trial that one of the jurors was a cousin of the accused. The trial court granted the State's motion to excuse the juror and then terminated the trial because it lacked a sufficient number of jurors. The defendant claimed any retrial would subject him to double jeopardy. The trial court disagreed and found there was "manifest necessity" for the earlier mistrial. *See Fierro,* 79 S.W.3d at 55. This court affirmed the trial court's action, but the Texas Court of Criminal Appeals reversed. By law, cousins are not related within the third degree of consanguinity so as to require their exclusion. *Id.* at 56; *see* TEX.GOV'T CODE ANN. § 573.023(c) (West 2012). Because the trial court erroneously determined the juror and the accused were

16

related within the third degree, there was no manifest necessity to declare the mistrial. *Fierro,* 79 S.W.3d at 56-57. Accordingly, double jeopardy barred any retrial of the defendant. *Id.* [5]

A similar scenario arose in *Ex parte Hunter*, 256 S.W.3d 900 (Tex.App.--Texarkana 2008, pet. dism'd) when it was learned during trial that one of the jurors had served on the very grand jury that indicted the defendant. The trial court, without a motion from either party, declared a mistrial. *Id*. at 903. In an appeal from the application for habeas corpus, the court concluded that without a request, the trial court erred in declaring a mistrial, and there was no manifest necessity to terminate the trial. *Id*. at 907. Even though the trial court's decision was understandable, it was deemed an error and precluded the manifest necessity justification for terminating the trial.[6]

Macias did not consent to the termination of the trial. He argued to the trial court that if the jury was released, double jeopardy would apply. While we certainly understand the decision that the trial court made, we ultimately conclude that it was incorrect and thus amounts to an improper termination of the earlier trial. Such a termination raises a double jeopardy bar to any subsequent prosecution.

## THE STAY ORDER

The parties do not address the effect of the stay order that we entered in the earlier appeal. We think it bears comment. Our order required the lower court to stay any further

---

[5] The *Fierro* court also discussed the trial court's failure to consider less drastic options short of declaring a mistrial. *Id*. at 57. We think the issue of less drastic options is of limited import here because if the trial court lacked jurisdiction, it would not have any plausible alternative other than to dismiss the jury.

[6] Macias advances this argument citing *Fong Foo v. U.S*., 369 U.S. 141, 143, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962) and *Bustos v. State*, 675 S.W.2d 811, 812 (Tex.App.--El Paso 1984, no pet.). In *Fong Foo*, a trial judge interrupted the government's case in chief and instructed the jury to enter an acquittal for the defendant. Even though that action was described as "egregiously erroneous," double jeopardy barred a retrial. *Id.* Because *Fong Foo* involved an actual acquittal, however, we find the case inapplicable here. In *Bustos*, a trial judge sua sponte ordered a mistrial based on the judge's belief, unsupported in the trial record, that a witness had committed perjury. The case similarly supports the proposition that an erroneous decision to terminate a trial by the trial judge will not support a manifest necessity finding.

proceedings "pending further order of this Court." The judgment we issued in the earlier appeal remands the case for trial, and would qualify as such a "further order." We raise the question of when that judgment became effective (and thus lifted our stay). TEX.R.APP.P. 18.6 states that in an interlocutory appeal, the judgment takes effect when the mandate is issued. The heading for Rule 18.6, however, is titled "Mandate in Accelerated Appeals." The State's earlier appeal in this case was not technically an accelerated appeal, but rather is termed a priority appeal. Cf. TEX.CODE CRIM.PROC.ANN. art. 44.01(f)(West Supp. 2015)("The court of appeals shall give precedence in its docket to an appeal filed under Subsection (a) or (b) of this this article.") *with* TEX.R.APP.P. 40.1 (recognizing distinction between cases given "precedence by law" and "accelerated appeals"). We conclude that Rule 18.6 does not apply here because the earlier appeal was not a true accelerated appeal. Accordingly, the trial court would have fairly concluded that our judgment, issued on October 16, 2013, lifted our stay order as of that date.

## CONCLUSION

In short, Macias carries the burden to prove entitlement to habeas relief. *Ex parte Richardson*, 70 S.W.3d 865, 870 (Tex.Crim.App. 2002). He has made that showing here. We sustain Issue One and reverse the denial of the Pretrial Application for Writ of Habeas Corpus. We remand the case back the trial court with instructions to grant the application and dismiss the indictment in this case.

December 14, 2016

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)

18